Appeal No. 24-1520

# United States Court of Appeals
# for the Federal Circuit

US PATENT NO. 7,679,637 LLC,

*Plaintiff-Appellant*,

*v.*

GOOGLE LLC,

*Defendant-Appellee.*

Appeal from the U.S. District Court for the Western District of Washington
in No. 2:23-cv-00592-JHC, District Judge John H. Chun

## BRIEF OF DEFENDANT-APPELLEE GOOGLE LLC

Michael C. Hendershot
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303

Rita J. Yoon
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104

T. Kaitlin Crowder
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114

Daniele San Román
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121

I. Sasha Mayergoyz
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
(312) 269-1572

Jennifer L. Swize
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

John R. Boulé III
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071

This appeal concerns claims 2-5 and 7-9 of U.S. Patent No. 7,679,637.

Claims 2 and 7 are the independent claims and are reproduced below.

<u>Claim 2:</u>

2.  A web conferencing system comprising:

(a) a first client application allowing at least one presenting participant to share computer screen video,

(b) said first client application also being arranged to allow said presenting participant to share at least one data stream selected from the group consisting of chat data, documents, web pages and white-boarding session,

(c) storage means for recording said computer screen video and said data stream, and

(d) a second client application allowing at least one observing participant to sense said computer screen video and said data stream live,

(e) said second client application also being arranged to allow said observing participant to selectively sense a previously presented and recorded part of said computer screen video and said data stream while said presenting participant is sharing a current part of said computer screen video and said data stream,

(f) said second client application also being arranged to allow said observing participant to selectively sense a previously presented and recorded part of said computer screen video and said data stream after said presenting participant has finished sharing a said computer screen video and, said data stream

whereby said web conferencing system is able to simultaneously record said computer screen video and said data stream and allow said observing participant to sense current and previously presented parts of said computer screen video and said data stream.

Claim 7:

7. A web conferencing system comprising:

(a) a first client application that allows at least one presenting participant to share data streams comprised of audio data and computer screen video data

(b) a second client application that allows at least one observing participant to sense said data streams

(c) a server application operatively connected to said first client application and to said second client application, said server application arranged to:

  i. receive said data streams from said first client application and record it in a storage device

  ii. retrieve said data streams from said storage device and send it to said second client application

(d) a time-scale modification component operatively connected to said second client application which is able to maintain substantially consistent perceived audio quality at a plurality of playback rates

whereby said data streams from said first client application can be simultaneously recorded by and retrieved from said storage device, and said second client application allows said observing participant to sense said data streams in real-time, and said second client application also allows said observing participant to selectively sense a previously presented and recorded part of said data streams at a plurality of playback rates at the same time that said presenting participant is sharing a current part of said data streams and after said presenting participant has stopped sharing, and said observing participant will perceive substantially consistent audio quality.

# CERTIFICATE OF INTEREST

Case No. 2024-1520

*U.S. Patent No. 7,679,637, LLC v. Google LLC*

Filing Party/Entity:  Google LLC

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date:  August 30, 2024                    Signature:    */s/ John R. Boulé III*

                                                       Name:         John R. Boulé III

**1.  Represented Entities** (Fed. Cir. R. 47.4(a)(1)) – Provide the full names of all entities represented by undersigned counsel in this case.

Google LLC

**2.  Real Party in Interest** (Fed. Cir. R. 47.4(a)(2)) – Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

None/Not Applicable

**3.  Parent Corporations and Stockholders** (Fed. Cir. R. 47.4(a)(3)) – Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

XXVI Holdings Inc.
Alphabet Inc.

**4.  Legal Representatives** – List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

Ryan J. McBrayer
Perkins Coie LLP

- i -

**5.  Related Cases** – Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?  If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

None/Not Applicable

**6.  Organizational Victims and Bankruptcy Cases** – Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

None/Not Applicable

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ............................................................................i

TABLE OF AUTHORITIES ...............................................................................v

TABLE OF ABBREVIATIONS .........................................................................ix

STATEMENT OF RELATED CASES ................................................................x

INTRODUCTION ...............................................................................................1

STATEMENT OF THE ISSUES.........................................................................3

STATEMENT OF THE CASE .............................................................................3

    A.    The '637 Patent And The Asserted Claims...........................................3

        1.    Overview...................................................................................3

        2.    The asserted claims ................................................................4

        3.    The '637 patent acknowledges that the claims recite technologies that were well-known and function in conventional ways................................................................6

    B.    This Lawsuit ..........................................................................7

    C.    The District Court Grants Google's Motion .......................................11

SUMMARY OF THE ARGUMENT ..................................................................13

STANDARD OF REVIEW ...............................................................................14

ARGUMENT .....................................................................................................15

I.    THE DISTRICT COURT CORRECTLY HELD THE CLAIMS PATENT INELIGIBLE..........................................................................15

    A.    Under *Alice* Step One, The Claims Are Directed To An Abstract Idea........................................................................15

        1.    The claims do not recite any improvement to underlying computer technology................................................................17

        2.    The claims recite the functional results of playing back recorded content................................................................18

        3.    The specification confirms that the claims cover the abstract idea of playing back recorded content........................22

**TABLE OF CONTENTS**
(continued)

Page

4.   The claims fall squarely within this Court's analogous
case law holding claims to be abstract ideas ............................ 24

B.   Under *Alice* Step Two, The Claims Lack An Inventive Concept ...... 26

1.   As the specification acknowledges, the individual claim
elements are standard and well-known .................................. 27

2.   An ordered combination of claim elements does not
supply an inventive concept ................................................ 30

II.   PLAINTIFF'S APPEAL LACKS MERIT ................................................. 31

A.   Plaintiff's *Alice* Step One Arguments Are Forfeited And Fail
On The Merits ......................................................................... 32

B.   Plaintiff's *Alice* Step Two Arguments Are Forfeited And Fail
On The Merits ......................................................................... 43

C.   Plaintiff's Remaining Arguments Lack Merit ................................... 44

1.   Plaintiff's representativeness challenge is forfeited and
refuted by the claims ........................................................ 44

2.   Plaintiff's assertion that claim construction is needed is
forfeited and baseless ....................................................... 47

3.   Plaintiff's challenge to resolution at the pleading stage
lacks merit ...................................................................... 48

4.   Plaintiff's request for leave to amend was properly
denied ........................................................................... 51

CONCLUSION ........................................................................................... 52

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018) ........................................................49

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
838 F.3d 1266 (Fed. Cir. 2016) ........................................................39

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016) ........................................................40

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
97 F.4th 1371 (Fed. Cir. 2024) ....................................................passim

*Alice Corp. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ....................................................................passim

*Ameranth, Inc. v. Domino's Pizza, LLC*,
792 F. App'x 780 (Fed. Cir. 2019) ...................................................42

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ...........................................11, 45, 49

*Beteiro, LLC v. DraftKings Inc.*,
104 F.4th 1350 (Fed. Cir. 2024) .................................................passim

*Bilski v. Kappos*,
561 U.S. 593 (2010).........................................................................40

*CardioNet, LLC v. InfoBionic, Inc.*,
955 F.3d 1358 (Fed. Cir. 2020) ...................................................42, 50

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019) ........................................................14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Chamberlain Grp. v. Techtronic Indus. Co.*,
935 F.3d 1341 (Fed. Cir. 2019) ........................................................16

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) ......................................................22, 23

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
859 F.3d 1352 (Fed. Cir. 2017) ....................................................48, 50

*Coop. Ent., Inc. v. Kollective Tech., Inc.*,
50 F.4th 127 (Fed. Cir. 2022) ......................................................27, 49

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d. 1350 (Fed. Cir. 2016) ........................................................34

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ..........................................................41

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
955 F.3d 1317 (Fed. Cir. 2020) ..........................................................19

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
839 F.3d 1089 (Fed. Cir. 2016) ..........................................................18

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
582 F.3d 1288 (Fed. Cir. 2009) ..........................................................33

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
527 F.3d 1318 (Fed. Cir. 2008) ..........................................................32

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
60 F.4th 1349 (Fed. Cir. 2023) ....................................18, 24, 29, 34

*IBM Corp. v. Zillow Grp.*,
2024 WL 89642 (Fed. Cir. Jan. 9, 2024) ..........................................31

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*IBM Corp. v. Zillow Grp.*,
  50 F.4th 1371 (Fed. Cir. 2022) ....................................................22, 25, 27

*Impact Engine, Inc. v. Google LLC*,
  2024 WL 3287126 (Fed. Cir. July 3, 2024)..................................17, 19

*In re Greenstein*,
  778 F. App'x 935 (Fed. Cir. 2019) ....................................................41

*In re Killian*,
  45 F.4th 1373 (Fed. Cir. 2022) ....................................................32, 41

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017) .........................................................34

*Interval Licensing LLC v. AOL, Inc.*,
  896 F.3d 1335 (Fed. Cir. 2018) ...................................................passim

*Miller Mendel Inc. v. City of Anna*,
  107 F.4th 1345 (Fed. Cir. 2024) .................................................passim

*Mobile Acuity Ltd. v. Blippar Ltd.*,
  110 F.4th 1280 (Fed. Cir. 2024) ...........................................46, 48, 49

*N. Star Int'l v. Ariz. Corp. Comm'n*,
  720 F.2d 578 (9th Cir. 1983) .............................................................51

*Realtime Data LLC v. Array Networks Inc.*,
  556 F. Supp. 3d 424 (D. Del. 2021),
  *aff'd*, 2023 WL 4924814 (Fed. Cir. Aug. 2, 2023).............................43

*RecogniCorp, LLC v. Nintendo Co.*,
  855 F.3d 1322 (Fed. Cir. 2017) .........................................................25

*Sage Prods., Inc. v. Devon Indus., Inc.*,
  126 F.3d 1420 (Fed. Cir. 1997) .........................................................32

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
65 F.4th 698 (Fed. Cir. 2023) .................................................................passim

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) ................................................................15, 49

*Swedberg v. Marotzke*,
339 F.3d 1139 (9th Cir. 2003) .........................................................................51

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020) ................................................................16, 17

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) ................................................................passim

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) ........................................................................35

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
957 F.3d 1303 (Fed. Cir. 2020) ......................................................................36

*Yu v. Apple Inc.*,
1 F.4th 1040 (Fed. Cir. 2021) .........................................................................39

**STATUTES**

35 U.S.C. § 101 ...............................................................................................passim

## TABLE OF ABBREVIATIONS

*Parties*

| Abbreviation | Term |
|---|---|
| Google | Google LLC |
| Plaintiff | U.S. Patent No. 7,679,637 LLC |

*Terms*

| Abbreviation | Term |
|---|---|
| '637 patent | U.S. Patent No. 7,679,637 (Appx28-40) |
| asserted claims | claims 2-5 and 7-9 of the '637 patent |
| BBr. | Principal Brief of Plaintiff, Dkt. 14 |
| DVR | digital video recorder |
| representative claims | claims 2-5 of the '637 patent |

*\* All emphasis is added throughout, unless otherwise indicated.*

*\* All internal case citations are omitted from citations, unless otherwise indicated.*

## STATEMENT OF RELATED CASES

This is the sole appeal from the case below.  Counsel for Google is not aware of any other case pending in this or any other tribunal that will directly affect or be directly affected by this Court's decision in the pending case.  *See* Fed. Cir. R. 47.5.

## <u>INTRODUCTION</u>

The district court's judgment that the asserted claims are invalid under 35 U.S.C. § 101 should be affirmed.  This case is a straightforward application of settled precedent.  The '637 patent's intrinsic record makes clear that the asserted claims are directed to an abstract idea without providing an inventive concept, just like similar claims this Court has repeatedly held are patent ineligible.  After carefully analyzing the claim language, the specification, and applicable precedent, the district court correctly granted Google's motion to dismiss the complaint for failure to state a claim due to lack of patent-eligible subject matter.

Plaintiff's appeal presents no error.  Instead, Plaintiff poses criticisms that are as unfair as they are wrong.

Plaintiff spends much of its brief on procedural arguments, none of which present a legitimate issue on appeal.  Plaintiff criticizes the district court for not conducting claim construction, not allowing discovery, not converting Google's motion to one for summary judgment because Google cited (judicially noticeable) material outside the complaint, and treating certain claims as representative.  None of these criticisms stick.  Plaintiff never proposed any constructions relevant to the Section 101 inquiry, it never pointed to any relevant necessary discovery (the Section 101 issue could be and was fully addressed on the intrinsic record alone), the district court did not rely on materials outside the complaint (a fact Plaintiff

does not acknowledge, even though the district court said so expressly), and Plaintiff never attempted to identify any material claim distinctions for purposes of Section 101 representativeness. These facts reflect Plaintiff's forfeiture of its arguments and reinforce the district court's proper resolution of patent ineligibility at the pleadings stage.

Plaintiff's criticisms of the district court's substantive analysis are likewise unfounded. To the extent the Court even considers these—many of Plaintiff's challenges are forfeited because it did not raise them to the district court—Plaintiff makes generic, cursory arguments that mirror the asserted claims' clearly generic, abstract nature. Notwithstanding Plaintiff's inadequate attempts to defend its claims under Section 101, the district court carefully evaluated the claims in light of the intrinsic record, applied the governing two-step *Alice* test, and compared the asserted claims to other claims this Court has reviewed—both cases upholding claims as eligible and cases rejecting claims as patent ineligible. In a comprehensive analysis providing multiple reasons for its conclusion, and all aligned with this Court's precedent, the district court explained that the claims are directed to an abstract idea and add nothing concrete or inventive. By forfeiture, the merits, or both, Plaintiff cannot resuscitate its ineligible claims.

## STATEMENT OF THE ISSUES

The asserted claims relate to web conferencing where the participants asynchronously observe a live meeting.  The specification acknowledges that the claims do so through conventional components.  *See infra* Section I.B.1.

1.    Did the district court correctly hold that the asserted claims are invalid under Section 101 because they:  (i) are directed to the abstract idea of playing back recorded content; and (ii) fail to add any inventive concept to that abstract idea, instead using conventional elements as the specification itself admits?

2.    Did Plaintiff fail to preserve numerous of its arguments on appeal and, in any event, fail to show error in the district court's judgment?

## STATEMENT OF THE CASE

**A.    The '637 Patent And The Asserted Claims**

**1.    Overview**

U.S. Patent No. 7,679,637 is titled "Time-Shifted Web Conferencing," and it is also the eponym for the limited liability company to which the patent is assigned—U.S. Patent No. 7,679,637 LLC—Plaintiff in this case.  Appx28. The '637 patent claims priority to 2006.  Appx34 (1:6-8).  As its title indicates, the patent relates to a web-conferencing system with capabilities to observe a web conference in real time, on delay, or at faster or slower speeds.  Appx28 (abstract); Appx37 (8:9-14).  The claimed system allows a presenter to share computer screen

video and other "data streams" (e.g., chat data, web pages) with an observer

through a client application.  Appx39-40 (12:32-13:14; 13:20-14:26).

The patent purports to solve the problem of web-conferencing systems being

"unable to enable participants to asynchronously observe a live meeting, i.e.,

observe a previously recorded part of the meeting while the meeting is still in

progress."  Appx34 (2:51-54).  The patent claims to solve this problem by

providing a web-conferencing system with "time-shifting capabilities"—the

patent's jargon for a meeting participant to pause, resume, seek backward or

forward content, or change the rate at which content is displayed (e.g., observe the

content at a slower or faster rate than real-time viewing).  Appx35 (3:61-67);

Appx37 (8:10-14).  When performing time-shifting, the patent applies "audio

time-scale modification."  Appx35 (3:25-32; 3:64-67).  The patent states that audio

time-scale modification "maintain[s] the perceived aspects of audio quality" by

"manipulating the time-scale of a stream of audio," Appx38 (9:4-7), i.e.,

"speed[ing] up or slow[ing] down audio playback," Appx35 (3:31-32).

### 2.  The asserted claims

Plaintiff asserted claims 2-5 and 7-9 against Google.  Appx94-104 ¶¶ 44-91;

Appx44-54.  Claims 2 and 7 are independent claims, and the remaining claims

depend therefrom.  Appx39-40 (12:32-14:26).  Claim 2 recites:

A web conferencing system comprising:

(a) a first client application allowing at least one presenting participant to share computer screen video,

(b) said first client application also being arranged to allow said presenting participant to share at least one data stream selected from the group consisting of chat data, documents, web pages and white-boarding session,

(c) storage means for recording said computer screen video and said data stream, and

(d) a second client application allowing at least one observing participant to sense said computer screen video and said data stream live,

(e) said second client application also being arranged to allow said observing participant to selectively sense a previously presented and recorded part of said computer screen video and said data stream while said presenting participant is sharing a current part of said computer screen video and said data stream,

(f) said second client application also being arranged to allow said observing participant to selectively sense a previously presented and recorded part of said computer screen video and said data stream after said presenting participant has finished sharing a said computer screen video and, said data stream

whereby said web conferencing system is able to simultaneously record said computer screen video and said data stream and allow said observing participant to sense current and previously presented parts of said computer screen video and said data stream.

Appx39 (12:32-61). Claim 3 adds "audio data" to the recited data streams, Appx39 (12:62-67); claim 4 "includes an audio time-scale modification component," Appx40 (13:2-3); and claim 5 permits the observer "to perform

- 5 -

time-shifting operations," Appx40 (13:11-14). Claims 2-5 are representative of claims 7-9. Appx11-12; *see* Appx40 (13:20-14:26).

### 3. The '637 patent acknowledges that the claims recite technologies that were well-known and function in conventional ways

The '637 patent recognizes that time-shifting technologies were already well-known. Appx35 (3:7-18). For example, the patent itself notes that consumers could record programs and time shift those programs (i.e., pause, resume, rewind, or fast-forward a recorded program) using VCRs. Appx35 (3:7-16). The patent also describes that companies like TiVo, Inc. "paved the way in providing live time-shifting capabilities for television" via DVRs. Appx35 (3:7-13). The patent emphasizes that well before the claimed invention, "DVRs have empowered consumers by allowing them to time-shift real-time television content." Appx35 (3:17-18).

The '637 patent also explains that existing "[a]udio time-scale modification techniques" were previously applied to conventional time-shifting technologies to maintain quality of time-shifted audio. Appx35 (3:25-32). In fact, the patent provides numerous examples of conventional "audio time-scale modification" technologies, including "voice-mail and dictation tape playback, post synchronization of film and video, and playback of recorded content." Appx35 (3:26-29). In addition, the patent describes standard audio time-scale modification

algorithms that can be implemented for the claimed invention, including "the WSOLA algorithm introduced by Verhelst and Roelands … or related algorithms" as well as "Ollie Parviainen's open-source SoundTouch library," which the patent's "first embodiment uses."  Appx38 (9:4-13).

The '637 patent further acknowledges that the components recited in the asserted claims are well-known and function conventionally.  For instance, the patent describes the components responsible for sharing and displaying video and other data streams (the claimed "client applications") as "resembl[ing] those of similar components in existing web conferencing or audio video display applications."  Appx37 (8:35-37).  The patent states that these "applications could be provided for different operating systems or platforms," such as "Microsoft Windows" and "Adobe Flash."  Appx38 (10:20-29).  The patent also explains that the claimed "storage means for recording" can be performed by a server, which "simply stores the frame and its accompanying information."  Appx37 (7:19-20).  In fact, the patent stresses that the server can communicate using "existing advanced audio video broadcasting," including "protocols like the real-time transport protocol (http:tools.ietf.org/html/rfc1889)."  Appx38 (10:44-48).

## B.    This Lawsuit

In April 2023, Plaintiff filed this suit against Google.  Appx44-54.  Plaintiff alleged that Google's YouTube products infringed claims 2-5 and 7-9.  Appx46-52

¶¶ 14-42; Appx87-94 ¶¶ 14-43.  After Google requested that Plaintiff dismiss the complaint for lack of merit, Appx288-289, Plaintiff filed an amended complaint, Appx85-105.

Google moved to dismiss Plaintiff's amended complaint for failure to satisfy 35 U.S.C. § 101, among other grounds.  Appx121-136.  Using claims 2-5 as representative of claims 7-9, Google explained that the asserted claims do not cover patent-eligible subject matter under the two-step test from *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014).

For *Alice* step one, Google showed that the claims "are merely directed to the abstract idea of playing back recorded content applied to the Internet." Appx126; *see also* Appx123-132.  Google explained that "[a]ll purported advantages described in the '637 patent are nontechnical human or conventional activities, like recording and playing back content using VCRs or DVRs." Appx125-126.  And walking through the claim language, Google demonstrated that the claims "merely recite a desired result or function rather than a specific, innovative way to achieve the result or function."  Appx126.

For *Alice* step two, Google established that the claim limitations, both individually and as an ordered combination, function in a conventional way and do not supply an inventive concept.  Appx132-136.  Google cataloged where the patent itself repeatedly admits that "none of the recited components in the asserted

claims is new" and instead function in well-known or routine ways, Appx132, highlighting the same disclosure discussed in Section A.3 above.

Plaintiff's opposition principally argued that Google's motion to dismiss was premature because:  (i) Google cited material outside the complaint (a third-party patent), which Plaintiff argued required treatment as a motion for summary judgment; and (ii) *Alice* step two presents "a question of fact" that "require[d] claim construction, fact finding, and credibility determinations." Appx163; Appx170-72.  Yet Plaintiff never provided any proposed claim constructions.  *See* Appx163; 175-177.  And the discovery Plaintiff sought was merely to "support[] or refut[e]" its own patent's express disclosure, Appx250-251; Appx163, or related to Google patents (not at issue in this case) "to determine the basis on which Google contends its own patents are subject matter eligible," Appx178.  Moreover, Plaintiff argued generalities and conclusory assertions about the claims and specification—principally about what the claims are not rather than an affirmative articulation of claimed subject matter consistent with Section 101's requirements.  As Google's reply noted, "Plaintiff's response invokes general arguments but provides none of the required specifics to support them."  Appx272.

For example, for *Alice* step one, Plaintiff contended that its claims are "addressed to a specific technical problem with web-based video conferencing, itself a highly technical field that requires all manner of technologies just to

establish the conference"; that "the invention is not readily analogizable to a mental process, human activity, or the brick-and-mortar world"; and that the "claims do not recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." Appx173-174. But Plaintiff did not provide any detail or more specific description of its claimed subject matter. *See* Appx172-75; *see also* Appx275-278.

Similarly, for *Alice* step two, Plaintiff asserted that "the specific claim limitations … are not functional claims and do not include all possible generic computer components." Appx177. But Plaintiff's assertion was unaccompanied by any articulation or substantiation of how the claims add an inventive concept. *See* Appx175-178; *see also* Appx281. Plaintiff also did not address Google's showing that the patent specification itself identified every claim element as well-known, conventional, or routine. *See* Appx175-178; *see also* Appx281.

Plaintiff's other arguments likewise lacked detail. While Plaintiff "disagree[d]" that claims 2-5 are representative of claims 7-9, Appx168, it did not elaborate. *See* Appx168-169; Appx278. Similarly, at the end of its opposition, Plaintiff included a one-line request for leave to further amend its complaint "to the extent the Court finds any defects." Appx184. But it made no argument to support this request, such as why further amendments would not be futile. *See* Appx184.

- 10 -

### C.    The District Court Grants Google's Motion

In a thorough, 26-page opinion, the district court granted Google's motion, dismissing Plaintiff's amended complaint because the asserted claims are patent ineligible.  Appx1; Appx27.

The court agreed with Google that claims 2-5 are representative of claims 7-9.  The court detailed the similarities between claims 2-5 and claims 7-9 to warrant concluding that the former are "representative for purposes of its § 101 analysis."  Appx11-12 (citing *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018)).  The court also noted Plaintiff "d[id] not present any meaningful argument" that the limitations of claims 7-9 somehow had "distinctive significance" compared to claims 2-5.  Appx11-12.

In addressing claims 2-5 to reach its Section 101 determinations, the court evaluated the intrinsic record and carefully applied this Court's precedents.  Appx13-25.  Under *Alice* step one, the court identified three reasons why the claims are directed to the abstract idea of playing back recorded content.  First, the court determined that the claims do not address a problem specifically arising in the computer realm, nor recite any specific improvement to computer capabilities.  Appx18-20.  Noting Plaintiff's contention that "the patent claims an invention that is specifically addressed to a specific technical problem with web-based video conferencing," the Court emphasized that "Plaintiff d[id] not elaborate on this."

Appx18-19.  The court thus "struggle[d] to discern what is the 'specific technical problem with web-based video conferencing'" alleged by Plaintiff.  Appx18.  Second, the court explained that the claim language—reciting such steps as "share," "store," "observ[e]," and "sense"—is result-oriented.  Appx20.  Third, the court compared the claims to similarly worded and described claims that this Court has held were directed to abstract ideas.  Appx20-21.

Under *Alice* step two, the district court reviewed the intrinsic record and determined that the claim elements—both individually and as an ordered combination—do not recite an inventive concept and instead function only conventionally.  Appx21-24.  As the court explained, Plaintiff's mere assertion that the claims recite inventive concepts was insufficient:  "Plaintiff d[id] not explicitly identify these 'inventive concepts' and neither the claim language nor the specification outlines these concepts."  Appx22.  The court further reasoned that, even if the claimed inventive concept were "the enablement of a user to 'observe a previously recorded part of the meeting while the meeting is still in progress,'" as Plaintiff contended, that still failed to "sufficiently recite an inventive concept."  Appx22.  Such a concept "merely restate[d] the 'abstract goals of the invention'" and did "not teach how" the claimed invention solved the technological problem.  Appx22-23.

The court therefore dismissed Plaintiff's amended complaint with prejudice, denying leave to further amend. Appx25. In doing so, the court reasoned that amendment "would be futile" because the claims are patent ineligible based on the intrinsic record alone, and no amendment to the complaint "can alter what [the] patent itself states." Appx25.

## SUMMARY OF THE ARGUMENT

I. The district court correctly held the asserted claims patent ineligible. Applying the two-part *Alice* test and using numerous similar claims in this Court's decisions for comparison purposes, the court conducted a thorough analysis. At step one, the court provided three reasons why the claims are directed to an abstract idea, and it explained why the generic functionality claimed added nothing inventive. The court's reasoning fully accords with the claim language, the specification, and this Court's precedent. As the intrinsic record makes clear, the claims are directed to playing back recorded content—an abstract idea cemented by a long line of precedent finding just that for similar functional, nontechnical claiming. At step two, the specification itself admits that the claim elements are conventional and routine, failing to add anything inventive to satisfy Section 101. The district court correctly held that the asserted claims are patent ineligible.

II. Plaintiff, meanwhile, offered only cursory, insufficient arguments to the district court. And Plaintiff does the same on appeal—presenting a scattershot

- 13 -

of arguments devoid of any detail sufficient to support its claims under Section 101. Nor can Plaintiff fairly criticize the district court for the flaws in Plaintiff's own case. Contrary to its requests here or below, Plaintiff never explained why certain claims were not representative of others or how claim construction could matter. Similarly, Plaintiff's unsubstantiated requests for discovery and further amendment of its complaint could not rectify the deficiencies of its claims. Indeed, for numerous of these and other points, Plaintiff's arguments were so minimal or even nonexistent at the district court that they are forfeited. But even setting forfeiture aside, this appeal can be resolved on the merits alone: the claims are not patent eligible.

## STANDARD OF REVIEW

Applying regional circuit law, the Ninth Circuit here, this Court reviews "the grant of a motion to dismiss" de novo. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1306-07, 1314 (Fed. Cir. 2019). The Ninth Circuit also reviews de novo a denial of leave to amend a complaint as futile. *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 705 (Fed. Cir. 2023).

Patent eligibility under Section 101 "is ultimately a question of law that may be based on underlying factual findings." *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1377 (Fed. Cir. 2024). Section 101 challenges can be resolved at the motion-to-dismiss stage "where the undisputed facts," applying Rule

12(b)(6)'s standards, "require a holding of ineligibility." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

In *Alice*, the Supreme Court "articulated a two-step test" "for examining whether a patent claims patent-ineligible subject matter." *AI Visualize*, 97 F.4th at 1377. First, the court evaluates "whether a claim is directed to a patent-ineligible concept like an abstract idea." *Id.* "If the answer is no, then the inquiry ends. But if the answer is yes, the inquiry proceeds to the second step." *Id.* Second, the court determines "whether the claim recites elements sufficient to transform it into a patent-eligible application." *Id.* If not, the claim is invalid.

## ARGUMENT

## I. THE DISTRICT COURT CORRECTLY HELD THE CLAIMS PATENT INELIGIBLE

### A. Under *Alice* Step One, The Claims Are Directed To An Abstract Idea

Analyzing the intrinsic evidence and applying this Court's precedent, the district court properly determined at *Alice* step one that the asserted claims are directed to the abstract idea of playing back recorded content.

*Alice* step one examines "the character of the claims as a whole to determine whether they are 'directed to' patent-ineligible subject matter." *AI Visualize*, 97 F.4th at 1378. The "directed to" inquiry focuses on the claim language in light of the specification. *See, e.g.*, *Miller Mendel Inc. v. City of Anna*, 107 F.4th 1345,

- 15 -

1352-53 (Fed. Cir. 2024). For software inventions, patent-eligible claims must capture "a 'specific' improvement in computer capabilities," rather than recite "an abstract idea" that uses a computer "invoked merely as a tool." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020). When claims simply recite "a desirable result or function," they are directed to a patent-ineligible abstract idea. *Id.* In performing this analysis, "earlier cases in which a similar or parallel descriptive nature can be seen" informs whether a claim covers an abstract idea. *Chamberlain Grp. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1346-47 (Fed. Cir. 2019).

Here, claims 2-5 (which are representative of claims 7-9, *infra* Section II.C.1) "exhibit several features that are well-settled indicators of abstractness." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355 (Fed. Cir. 2024). The district court correctly identified three of these indicators as the reasons for its step-one determination. First, the claims do not focus on a specific technical problem arising in the realm of computer networks or computers, nor do they recite any specific technical improvement. Appx18-20. Second, the claims are drafted in exclusively result-oriented language. Appx20. Third, this Court has repeatedly found similar claims patent ineligible in other cases. Appx20-21. The '637 patent's specification confirms these reasons. The district court correctly held the claims are directed to the abstract idea of playing back recorded content.

- 16 -

### 1.    The claims do not recite any improvement to underlying computer technology

The district court's first reason was correct.  Nothing in the claims provides for any improved tools or techniques by which playing back recorded content is accomplished.  The claims' focus is the abstract idea of processing and displaying information "and not any improved concrete tools or methods by which that processing functionality is achieved." *Impact Engine, Inc. v. Google LLC*, 2024 WL 3287126, at *6 (Fed. Cir. July 3, 2024).

As the district court explained, the claims "do not include a 'specific implementation' of improving web-based conferencing."  Appx20.  The court also observed that the claims do not "focus 'on a solution to a problem specifically arising in the realm of computer networks or computers.'"  Appx18 (quoting *TecSec*, 978 F.3d at 1293).  And the court reasoned that the claims do not "identify 'a specific improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function.'"  Appx18 (quoting *TecSec*, 978 F.3d at 1293).  Such analysis fully aligns with this Court's guidance that when claims "contain[] no specificity about how the purported invention achieves those results," they "are almost always found to be ineligible for patenting under Section 101." *Beteiro*, 104 F.4th at 1356.

For example, the claims do not recite how "allowing … to share at least one data stream" or "allowing … to sense said computer screen" amounts to specific

- 17 -

technological improvements or improvements over the prior art.  Appx39

(12:32-38; 12:41-43).  Rather, the claims simply attempt to envelop the abstract

idea of playing back recorded content by reciting generic functions and results.

This underscores that "the focus of the claims is not on ... an improvement in

computers as tools, but on certain independently abstract ideas that use computers

as tools."  *See FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1095 (Fed.

Cir. 2016).

### 2.    The claims recite the functional results of playing back recorded content

The district court's second reason is also correct.  "[T]he steps of obtaining,

manipulating, and displaying data, particularly when claimed at a high level of

generality, are abstract concepts."  *AI Visualize*, 97 F.4th at 1378 (claims for

"storing," "creating," and "displaying" images amounted to an abstract idea); *see*

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023)

(claims for "receiving, displaying, converting, storing, and transmitting digital

video" "us[ed] result-based functional language" directed to an abstract idea).

That same is true here.

As their language demonstrates, the claims recite the generic result of

playing back recorded content "that itself is the abstract idea."  *Two-Way Media*

*Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).  For

example, claim 2 begins with two limitations reciting "a first client application

allowing at least one presenting participant to share computer screen video" that is "arranged to allow said presenting participant to share from at least one data stream selected from the group consisting of chat data, documents, web pages and white-boarding session." Appx39 (12:32-38). These limitations "merely make generic functional recitations that requests are made and then granted." *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1328 (Fed. Cir. 2020). They do not explain *how* the system allows a participant to "share computer screen video" or "share at least one data stream." Indeed, the limitations are "drafted using largely (if not entirely) result-focused functional language, containing no specificity about how the purported invention achieves those results." *Beteiro*, 104 F.4th at 1356.

The same is true for the rest of claim 2. The emphasis added below shows the "high-level, broadly articulated, result-defined" functionality unaccompanied by any recitation of how to achieve the claimed results. *Impact Engine*, 2024 WL 3287126, at *6.

> 2. A web conferencing system comprising:
>
> (a) *a first client application allowing* at least one presenting participant *to share computer screen video*,
>
> (b) *said first client application also being arranged to allow* said presenting participant *to share at least one data stream selected from* the group consisting of chat data, documents, web pages and white-boarding session,

- 19 -

(c) ***storage means for recording*** said computer screen video and said data stream, and

(d) ***a second client application allowing*** at least one observing participant ***to sense said computer screen video and said data stream live***,

(e) ***said second client application also being arranged to allow*** said observing participant ***to selectively sense a previously presented and recorded part*** of said computer screen video and said data stream ***while said presenting participant is sharing*** a current part of said computer screen video and said data stream,

(f) ***said second client application also being arranged to allow*** said observing participant ***to selectively sense a previously presented and recorded part*** of said computer screen video and said data stream after said presenting participant has finished sharing a said computer screen video and, said data stream

whereby ***said web conferencing system is able to simultaneously record said computer screen video and said data stream and allow said observing participant to sense current and previously presented parts*** of said computer screen video and said data stream.

Appx39 (12:32-61).

As the following chart reflects, the additional limitations in the remaining representative claims 3-5 follow the same pattern—reciting generalized results without "sufficiently describ[ing] how to achieve these results in a non-abstract way." *Two-Way*, 874 F.3d at 1337 (holding claims reciting "functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records'" to be abstract).

- 20 -

| Claim 3 | Claim 4 | Claim 5 |
|---|---|---|
| 3.  The system of claim 2 wherein:<br><br>(a) *said first client application allows* said presenting participant *to share audio data*<br><br>(b) *said storage means records said audio data*, and<br><br>(c) *said second client application allows* said observing participant *to sense said audio data*.<br><br>Appx39 (12:62-67). | 4.  The system of claim 3 wherein:<br><br>(a) said web conferencing system *includes an audio time-scale modification component*,<br><br>(b) *said second client application also allows* said participant *to observe* said computer screen video, said data stream, and said audio data at an adjustable rate of speed,<br><br>whereby *said audio time-scale modification component maintains* substantially consistent perceived aspects of audio quality at a plurality of chosen playback rates of speed.<br><br>Appx40 (13:1-10). | 5.  The system of claim 4 wherein *said second client application also allows* said observing participant *to perform time-shifting operations* comprising pausing, resuming and seeking.<br><br>Appx40 (13:11-14). |

As the district court explained, the claims are purely result-oriented.  The claims merely "'share'; 'store'; enable a user to 'observ[e]' and 'sense' the data; and enable 'time-shifting' capabilities."  Appx20.  Applying this Court's precedent, the court correctly held that "a claim that merely describes an effect or result dissociated from any method by which it is accomplished is usually not

- 21 -

directed to patent-eligible subject matter." Appx20 (quoting *IBM Corp. v. Zillow Grp.* ("*IBM I*"), 50 F.4th 1371, 1378 (Fed. Cir. 2022)).

### 3. The specification confirms that the claims cover the abstract idea of playing back recorded content

The specification confirms the district court's first two reasons. The specification can be useful "to understand 'the problem facing the inventor' and, ultimately, what the patent describes as the invention." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019). Here, the specification explains that the patent addresses the purported problem of permitting meeting participants to "observe a previously recorded part of the meeting while the meeting is still in progress." Appx34 (2:51-54). This, however, is no more than the abstract idea of playing back recorded content while a meeting is ongoing.

Other disclosure in the specification verifies this understanding. For example, the patent enumerates five purported "advantages" of the claimed invention. Yet, each "advantage" simply concerns the abstract idea of playing back recorded content:

(1) "a participant can enter a meeting after it has begun and either begin observing the live content or ***rewind and see the content that they missed***," Appx35 (3:39-41).

(2) "a participant can observe a meeting in real-time and be able ***to pause the content*** to deal with an interruption," Appx35 (3:42-43).

(3) "a participant observing a meeting can ***easily replay an interesting segment***," Appx35 (3:44-45).

(4) "a participant can observe a live meeting at ***slower than real-time*** to more easily digest the content," Appx35 (3:46-47).

(5) "a participant observing on a delay (from joining late, pausing, replaying, etc. …) can observe the content ***faster than real-time***," Appx35 (3:48-50).

Each purported "advantage" is akin to nontechnical human or conventional activities, e.g.: reading a record of part of a meeting missed while the meeting remains ongoing (such as reviewing a real-time transcript of hearing from a court reporter while that hearing is ongoing or reviewing notes and drawings on a whiteboard during a lecture while the lecture is ongoing); recording and playing back content using VCRs or DVRs; or participating in a three-person conversation asking one person to repeat what the other person said. A claim's "similarity to 'fundamental … practices long prevalent' is yet another clue that the claims may be abstract and unpatentable." *Beteiro*, 104 F.4th at 1356 (omission in original). Here, such similarities underscore the claims' abstract nature.

"[L]ooking at the problem identified in the patent, as well as the way the patent describes the invention, the specification suggests that the invention of the patent is nothing more than the abstract idea of communication over a network for interacting with a device." *ChargePoint*, 920 F.3d at 768. This reasoning applies with equal force here and compels the same result.

### 4.    The claims fall squarely within this Court's analogous case law holding claims to be abstract ideas

The district court's third reason is also correct. This Court's decisions reinforce that playing back recorded content is an abstract idea. There are "several precedents in which [this Court] h[as] concluded that broadly analogous claims … [are] abstract." *Beteiro*, 104 F.4th at 1356. The district court's analysis thoroughly examined and applied these cases. Appx13-18; Appx20-21.

For example, in *Hawk Technology*, a case analyzed by the district court, this Court held that claims "directed to a method of receiving, displaying, converting, storing, and transmitting digital video 'using result-based functional language'" cover an abstract idea. 60 F.4th at 1357; *see* Appx13-14; Appx21. Likewise, the claims here cover playing back recorded content and recite similar result-based functional language. Indeed, the claims in *Hawk Technology* recited "receiving," "displaying," "converting," "storing," "transmitting" video, 60 F.4th at 1357, and the claims here similarly recite "sens[ing]," "sharing," "stor[ing]," "recording," and "presenting" data. Appx39 (12:32-61).

The claims here are also similar to claims "directed to 'providing information to a person without interfering with the person's primary activity,'" which this Court in *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335 (Fed. Cir. 2018), determined to be ineligible under Section 101. *Id.* at 1344-45. Like the claims in *Interval*, which the district court here also analyzed, the claims "merely

provide the abstract idea of 'collect[ing], organiz[ing], and display[ing] … two sets of information on a generic display device,'" as the district correctly held. Appx20 (omission in original) (quoting *Interval*, 896 F.3d at 1344-45); *see also* Appx14-17 & Appx19-20 (further discussing similarly result-oriented claims found patent ineligible in *Two-Way* and *IBM I*).

This Court also instructs that "process[es] that start[] with data, add[] an algorithm, and end[] with a new form of data [are] directed to an abstract idea." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). Such a process is precisely what the '637 patent claims: sharing data (such as video or web pages), recording data, storing data, sensing (receiving and observing) data, and presenting data. Appx39 (12:32-61). Further, the time-shifting functionality in claims 4 and 5 (e.g., "pausing, resuming and seeking" a video stream) is just like the "steps of obtaining, manipulating, and displaying data," which this Court holds is an abstract idea. *AI Visualize*, 97 F.4th at 1378.

Simply put, the "claims are directed to receiving, storing, transmitting, determining, selecting, and generating information, which place them in the 'familiar class of claims directed to a patent-ineligible concept.'" *Miller*, 107 F.4th at 1352.

*    *    *

The intrinsic evidence and this Court's precedent uniformly show that the claims are directed to the abstract idea of playing back recorded content.

**B.    Under *Alice* Step Two, The Claims Lack An Inventive Concept**

Again analyzing the intrinsic evidence and applying this Court's precedent, the district court properly determined at *Alice* step two that the asserted claims do not recite an inventive concept.

*Alice* step two "consider[s] the claim elements individually and as an ordered combination to assess whether they 'transform the nature of the claim into a patent-eligible application of the abstract idea.'" *AI Visualize*, 97 F.4th at 1379. To survive this step, "a claim must recite something 'significantly more' than an abstract idea itself." *Id.* The claim "cannot rest on the patent-ineligible concept alone" or be made eligible by "claim elements that are routine, conventional, or well-known." *Id.* A "patentee that emphasizes a claim's use of certain technology, for example, a general-purpose computer, fails at step two when the intrinsic record establishes that the technology is conventional or well-known in the art." *Id.* at 1380. Indeed, if the "specification provides that technology [in the claim elements] existed at the time of the invention," that precludes transforming the abstract idea into something patent eligible. *Id.*

The district court correctly determined that the claims lack an inventive concept. The court explained that the "representative claims are comprised of

- 26 -

'generic computer functions'" and neither the claims nor the specification "show a technological improvement"; instead, "the limitations can be implemented using generic computer elements." Appx22-24.

## 1.    As the specification acknowledges, the individual claim elements are standard and well-known

The patent repeatedly acknowledges that each of the individual claim elements is conventional and routine. A "patentee that emphasizes a claim's use of certain technology, for example, a general-purpose computer, fails at step two when the intrinsic record establishes that the technology is conventional or well-known in the art." *AI Visualize*, 97 F.4th at 1380. Thus, where patents admitted the conventionality of claim elements, this Court has held the claims non-inventive for purposes of Section 101. *See, e.g.*, *id.*; *IBM I*, 50 F.4th at 1380 ("And IBM's 'user determined shape' limitation adds nothing more because, as IBM acknowledged, relying on a 'user determined shape' to make selections was already known in the prior art."). Just like in those cases, the claims here comprise numerous elements that the specification describes as standard and well-known, even identifying readily available commercial components for various elements:

**"first client application" / "second client application" (claims 2-5, 7-9):**

- "Client applications … run on participants' computers. The client application captures the streams that the participant chooses to share (if any). The client application *sends these streams* to server 110. The client application also *receives the streams* from the server that the participant chooses to observe (if any) and *displays them* …. *In this way a participant*

- *can use the client application to share and/or receive.*"  Appx36 (5:10-20).

- "After frames are received by client 120*a*-120*n*, they are sent to one of the stream decompression and display components.  For the most part, the workings of these components resemble those of *similar components in existing web conferencing or audio video display applications*."  Appx37 (8:33-39).

- "*[A]pplications could be provided for different operating systems or platforms.*  For example, in a *Microsoft Windows environment* a native application might be required for full capabilities, such as sharing screen data, but an *Adobe Flash application* might be able to observe and share some types of data."  Appx38 (10:20-29).

**"storage means for recording" (claims 2-5):**

- "When server 110 receives a frame, it *simply stores the frame and its accompanying information*."  Appx37 (7:19-20).

- "The way that frame data and associated information is stored and retrieved is *open to alternatives*."  Appx38 (10:11-12).

**"audio time-scale modification component" (claims 4-5, 7-9):**

- The patent explains that existing "[a]udio time-scale modification techniques have been applied to *applications such as voice-mail and dictation tape playback, post synchronization of film and video, and playback of recorded content*.  These techniques *have also been employed … for streaming audio* (to speed up or slow down audio playback to maintain an optimal buffer length)."  Appx35 (3:25-31).

- "In yet another field, *algorithms have been devised to timescale manipulate audio content with high fidelity reproduction*.  These algorithms allow an audio stream to be played back at a faster or slower rate while maintaining other perceived aspects of the audio, such as timbre, voice quality, and pitch."  Appx35 (3:19-24).

- The patent describes existing "audio time-scale modification" components that "***maintain[] the perceived aspects of audio quality***," including "the WSOLA algorithm introduced by Verhelst and Roelands, and available" online, "or related algorithms." Appx38 (9:4-13); *see also* Appx38 (10:44-52). The patent goes on to explicitly state that its "first embodiment uses Olli Parviainen's open-source Sound-Touch library," also "available" online. Appx38 (9:10-13).

**"server application" (claims 7-9):**

- "When server 110 receives a frame, it ***simply stores the frame and its accompanying information***[.]" Appx37 (7:20-21).

- The patent explains that the server can communicate using "***existing advanced audio video broadcasting mechanisms***," including "***protocols like the real-time transport protocol*** (http://tools.ietf.org/html/rfc1889)." Appx38 (10:44-48). With that existing protocol, "the server ***simply continues to send frames to clients*** and some separate quality of service mechanism informs the server if the frames are reaching their destination." Appx38 (10:48-50).

The specification shows that "[n]one of the limitations recited in the claim 'requires anything other than conventional computer and network components operating according to their ordinary function.'" *Miller*, 107 F.4th at 1354. Indeed, the specification admits that the claims utilize "existing" components, Appx37 (8:33-39), including "open-source" technology that is "available" online, Appx38 (9:4-13). Such components are well-known and conventional. The district court correctly explained that "the representative claims of the '637 Patent, read in light of the specification, 'do not show a technological improvement in video storage and display because the limitations can be implemented using generic computer elements.'" Appx24 (quoting *Hawk Tech.*, 60 F.4th at 1358).

### 2. An ordered combination of claim elements does not supply an inventive concept

An ordered combination of the claim elements recites conventional, generic computer technology.  The claims "use[] a conventional ordering of steps"—first sharing content, then recording it, storing it, and playing it back, *e.g.*, Appx39 (12:32-61)—"with conventional technology to achieve its desired result."  *See Two-Way*, 874 F.3d at 1339.

The patent itself notes that the individual claim elements are conventional and well-known.  *See supra* Section I.B.1.  The patent further explains that the elements in combination likewise function in a conventional way.  For example, when discussing the clients' receiving, processing, and displaying of the shared data streams, the '637 patent emphasizes:

> For the most part, ***the workings of these components resemble those of similar components in existing web conferencing or audio video display applications***.

Appx37 (8:33-39); *see* Appx37 (7:19-20) (same for the server application and storage means); Appx38 (10:20-29) (same for client applications).  The same is true for the time-shifting elements recited in claims 4 and 5.  The patent acknowledges that "[a]udio time-scale modification ***techniques have been applied*** to applications such as voice-mail and dictation tape playback, post synchronization of film and video, and ***playback of recorded content***."  Appx35 (3:25-28); *see also* Appx35 (3:19-24, 3:29-33); Appx38 (9:3-13, 10:44-53) (same).

- 30 -

As discussed above, *supra* Section I.B.1, "nothing in these claims requires anything other than conventional computer and network components operating according to their ordinary functions." *Two-Way*, 874 F.3d at 1341.

The district court correctly concluded that the claim elements, even in an ordered combination, simply "restate[] the 'abstract goals of the invention'" and do "'not teach how' a previously recorded part of the meeting can be observed while the meeting is still in progress." Appx22. The court further observed that "Plaintiff d[id] not explicitly identify … 'inventive concepts' and neither the claim language nor the specification outlines these concepts." Appx22. In so doing, the court rightly applied this Court's instruction that "[m]erely alleging inventiveness without tying those allegations to the patent is insufficient to survive a Rule 12 motion." Appx22 (quoting *IBM Corp. v. Zillow Grp.*, 2024 WL 89642, at *5 (Fed. Cir. Jan. 9, 2024)).

\*      \*      \*

"In the end, [the asserted] claims amount to nothing more than the practice of an abstract idea using conventional … computer equipment." *Beteiro*, 104 F.4th at 1359. The claims are patent ineligible, and the judgment should be affirmed.

## II.    PLAINTIFF'S APPEAL LACKS MERIT

Plaintiff's arguments on appeal are either forfeited, contrary to this Court's precedents, or refuted by the four corners of the '637 patent itself.

- 31 -

**A.    Plaintiff's *Alice* Step One Arguments Are Forfeited And Fail On The Merits**

In attempting to avoid the district court's well-reasoned and well-supported determination that the claims are directed to an abstract idea, Plaintiff raises a litany of drive-by arguments on *Alice* step one, none of which has merit and many of which Plaintiff forfeited.

First, Plaintiff asserts that the "claims in the case … are focused on a specific improvement to activity that occurs only within the realm of computers: web-based conferencing." BBr.35. It argues that "the claims are focused on a specific and concrete technological advance," BBr.22, which Plaintiff describes as "enabl[ing] web-based conference participants to asynchronously observe an in-person meeting, i.e., observe a previously recorded part of the in-person meeting while the in-person meeting is still in progress." BBr.28; *see* BBr.26-29 (making the same argument).

Plaintiff, however, never developed this argument below. This Court "does not 'review' that which was not presented to the district court." *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322 (Fed. Cir. 2008). It is improper to fault the district court for not addressing an argument it was never given the opportunity to consider. *See, e.g.*, *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997). This includes making only "conclusory, skeletal argument[s]" in the proceedings below. *In re Killian*, 45 F.4th 1373, 1386 (Fed.

- 32 -

Cir. 2022); *see also, e.g.*, *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009) (A party's argument is not preserved when it "fails to raise [the] argument before the trial court, or presents only a skeletal or undeveloped argument to the trial court.").

Before the district court, Plaintiff rested mainly on conclusory assertions. *See* Appx172-175.  Given Plaintiff's brevity and generality, it is not surprising the district court "struggle[d] to discern what is the 'specific technical problem with web-based video conferencing,' as ***Plaintiff does not elaborate on this***." Appx18-19.  Indeed, while Plaintiff asserted that "the '637 claims change the routine or conventional process of the way otherwise live video conferences can be observed," its explanation that "[c]laim 2 claims how web-based conferences that use two different applications (one to stream the conference and the other to view it) and at least two different data streams that are both streaming live and being recorded such that a participant can time-shift the conference," Appx174-175, did not substantiate how this was a technical improvement to, or a technical solution to a problem specific to, web-based conferencing.  Accordingly, Plaintiff forfeited its newfound theories about how the claims are "focused on a specific asserted improvement that allows a presentation to be reviewed asynchronously (live and recorded) at the same time."  BBr.23-26.

- 33 -

In any event, Plaintiff's arguments are unfounded.  As detailed above, the claims do not focus on a specific problem in web-conferencing.  *See supra* Section I.A.1.  The claims do not explain how they provide any sort of specific and technical advance in that field; instead, they seek to capture the abstract idea of playing back recorded content itself by reciting only "a desirable result or function."  Appx18; *see supra* Section I.A.1-2.  At best, "the problem facing the inventor was the abstract idea of [playing back recorded content in the context of web-conferencing] more efficiently and effectively, not an improvement to computer technology."  *See Miller*, 107 F.4th at 1352-53.  Affirming a determination that "providing someone an additional set of information without disrupting the ongoing provision of an initial set of information is an abstract idea," this Court endorsed the reasoning that "this 'basic and longstanding practice can be found in, for example, a television station's use of a breaking news ticker across the bottom of the screen.'"  *Interval*, 896 F.3d at 1344; *see also Hawk Tech.*, 60 F.4th at 1357-58 (holding that claims for "request[ing]" and "displaying" "one or more" data streams were ineligible under Section 101); *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1341-42 (Fed. Cir. 2017) (holding claims directed to displaying a "dynamic document" with content from multiple records were ineligible under Section 101); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d. 1350, 1355 (Fed. Cir. 2016) (holding that recitation of "'displaying

concurrent visualization' of two or more types of information" was insufficient to survive Section 101 challenge); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714-15 (Fed. Cir. 2014) (holding that claims for sequentially displaying two different sets of information covered an abstract idea).

Second, Plaintiff argues that the "claims are not 'result oriented'" because "they expressly explain how the systems need to be set up to accomplish the improvement." BBr.29-30. This argument is also forfeited. The only potential connection to this argument in Plaintiff's district-court brief is the same assertion just discussed—that "[c]laim 2 claims how web-based conferences that use two different applications (one to stream the conference and the other to view it) and at least two different data streams that are both streaming live and being recorded such that a participant can time-shift the conference." Appx174-75. But such a bare-bones assertion is insufficient to preserve the argument for appeal.

In any event, Plaintiff's contention that the claims are not result-oriented is wrong. Plaintiff asserts that the "claims are not 'result oriented'" because "they expressly explain how the systems need to be set up to accomplish the improvement." BBr.29. As shown above, neither the claims nor specification disclose a specific computer system, how it is set up, nor improvements to such, and instead recite nothing more than functional, result-oriented relationships

among the elements.  *See supra* Section I.A.  The claims thus do not meet step one

under analogous case law.

Plaintiff argues that, "[i]f the district court were correct to disparage patent

claims under *Alice* just on the basis alone that they evoke certain 'results' and

allow certain improvements, this would turn the policy behind the patent system on

its head."  BBr.29.  But this Court has repeatedly held that claims "drafted using

largely (if not entirely) result-focused functional language, containing no

specificity about how the purported invention achieves those results … are almost

always found to be ineligible for patenting under Section 101."  *Beteiro*, 104 F.4th

at 1356; *see Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1308 (Fed.

Cir. 2020) (claims ineligible when they "recited a series of abstract steps … using

'result-based functional language' without the means for achieving any purported

technological improvement").  The district court's application of this Court's

precedent addressing the use of result-oriented language was a fully appropriate

methodology.  Appx20 (applying this Court's case law).

Third, Plaintiff asserts that the district court "erred when it failed to focus on

the claims and instead concluded that the '637 ***patent*** is directed to the abstract

idea of playing back recorded content."  BBr.21 (capitalization altered; emphasis

by Plaintiff).  It claims that "[n]owhere d[id] the court determine what 'abstract

- 36 -

idea,' if any, each of the asserted *claims* is 'directed to.'" BBr.22. This is demonstrably wrong.

The district court anchored its analysis in the language of the representative claims—not the patent—and properly applied this Court's precedent in doing so. *See* Appx18-21. *Contra* BBr.21-26. In fact, Plaintiff's brief belies its argument; Plaintiff itself quotes the district court's focus on the claims:

- "Plaintiff does not say, and *the claim language* does not illustrate how, *the claims* focus 'on a solution to a problem specifically arising in the realm of computer networks or computers.'" Appx18 (quoted at BBr.26).

- "*[T]he representative claims* of the '637 Patent 'possess the following indicia of abstractness: … *claim language* that is result-oriented.'" Appx20 (quoted at BBr.26).

Indeed, throughout its opinion the court consistently focused on the claims:

- "The court 'must focus on *the language of the Asserted Claims themselves* … considered in light of the specification.'" Appx4-5.

- "The court must 'look to whether the *representative claims* in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery.'" Appx5 (cleaned up).

- "Nor do *the claims* identify 'a specific improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function[.]'" Appx18.

- "Plaintiff says that the invention 'solved some of those technical issues' but does not specify how *the claims* make the alleged improvements. Nor does *the claim language* identify the alleged improvements." Appx19-20.

- "[T]he Federal Circuit found patent claims 'directed to a method of receiving, displaying, converting, storing and transmitting digital video "using result-based functional language[,]"' ineligible under § 101. *The*

- 37 -

*representative claims* of the '637 Patent are similarly directed." Appx21 (alteration in original).

- "The focus of the § 101 analysis is on *the claim language* of the '637 Patent. Therefore, this Court must consider *the claims* of the '637 Patent for the § 101 analysis." Appx22 n.7.

<u>Fourth</u>, Plaintiff's argument that "playing back recorded content" is always rooted in technology is wrong and irrelevant. BBr.35-37 (contending that "playing back recorded content" is not an abstract idea because "[a]ll ways of playing back recorded content known to humanity are rooted in technology"). Plaintiff ignores that numerous nontechnical solutions to this problem existed. *See supra* Section I.A.3 (providing examples). Indeed, this Court's precedent recognizes that the "nontechnical human activity of passing a note to a person who is in the middle of a meeting or conversation" to bring the person up to speed, which is similar to playing back recorded content, to be abstract. *Interval*, 896 F.3d at 1344. "Standing alone, the act of providing someone an additional set of information without disrupting the ongoing provision of an initial set of information is an abstract idea." *Id.* The district court correctly considered and applied this precedent. Appx20-21.

Even assuming involvement of technology in the asserted claims, that does not make the idea of "playing back recorded content" any less abstract. This Court has recognized that analogizing to "century-old practice[s]" and other fundamental concepts to weigh whether a claim is directed to an abstract idea "is well supported

by [this Court's] precedents." *Yu v. Apple Inc.*, 1 F.4th 1040, 1046 (Fed. Cir. 2021) (quoting *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016)).  Nor was it procedural error for the district court to consider the long-prevalent practice of playing back recorded content at the pleading stage.  *Affinity Labs*, 838 F.3d at 1270 (not error to consider "that the delivery of media content to electronic devices was well known long before the priority date of the [asserted] patent" at the pleading stage).

Plaintiff's reference to Thomas Edison "invent[ing] the phonograph in 1877," BBr.35, proves the point.  As Plaintiff acknowledges, the idea of playing back recorded content has been around for centuries.  The "claimed [system's] similarity to 'fundamental … practices long prevalent' is yet another clue that the claims may be abstract and unpatentable."  *Beteiro*, 104 F.4th at 1356.  The district court analogizing the claims "to longstanding 'real-world' … activities" illustrate that the claims are directed to an abstract idea.  *Id.*

In the same vein, Plaintiff wrongly asserts that the court's step one conclusion will "eviscerat[e] tens of thousands of patents in this technological field."  BBr.37.  Not so.  Claims directed to an abstract idea simply need to be sufficiently grounded in an inventive concept "to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself,"

- 39 -

*Alice*, 573 U.S. at 217-18 (alteration in original)—something the '637 patent claims do not do.

Fifth, Plaintiff's effort to limit the field of invention to web-based conferencing does not render the claims any less abstract. Plaintiff argues that the claims are limited to solving a particular problem arising only in web-based conferencing. BBr.26-29. But "merely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016); *see also Bilski v. Kappos*, 561 U.S. 593, 612 (2010) ("[L]imiting an abstract idea to one field of use ... d[oes] not make the concept patentable.").

Here, the '637 patent specification recognizes that web-conferencing systems were a preexisting technological environment, explaining that existing systems "allow participants to share content with and observe content," including "screen video data, camera video data, audio data (through computers and through telephones), chat data, documents, and the like." Appx34 (2:39-43). The patent further acknowledges that "many web conferencing systems can record the meeting," Appx34 (2:48-49), and that in "another field, algorithms have been devised to time-scale manipulate audio content," Appx35 (3:19-20), which the patent emphasizes are "open-source" and "available" online, Appx38 (9:4-13). Accordingly, limiting the abstract idea of playing back recorded content to a

- 40 -

well-known, existing web-conferencing environment cannot remove the idea from the realm of abstract. *See, e.g.*, *In re Greenstein*, 778 F. App'x 935, 938 (Fed. Cir. 2019) ("The claimed use of the Internet and generic computer functionality to receive, manipulate, and transmit data serves to 'limit[] the field of use of the abstract idea to a particular existing technological environment,' but it 'does not render the claims any less abstract.'").

Sixth, Plaintiff's criticism of the district court's comparison to this Court's Section 101 decisions is unfounded.  BBr.34-35.  It is legally "sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016); *see Beteiro*, 104 F.4th at 1356 ("[W]e have several precedents in which we have concluded that broadly analogous claims" are "abstract."). "Indeed, the Supreme Court has decided cases arising under § 101 ***through comparison to its prior opinions***." *Killian*, 45 F.4th at 1383.

In any event, on appeal, Plaintiff only attempts to distinguish one of the several cases from this Court to which the district court analogized, leaving the district court's other analyses unaddressed.  *See* BBr.35 (addressing only *Interval*). And even there, Plaintiff's attempt to distinguish this Court's precedent boils down to its assertion that the "claims in this case … are focused on a specific improvement to activity that occurs only within the realm of computers:

- 41 -

web-based conferencing." BBr.34-35. But that argument fails for the reasons discussed above—*viz.*, Plaintiff fails to explain what "specific improvement" the asserted claims capture, and it cannot limit the claims to a particular field of use to make them any less abstract. *See supra*. When claims "involve the mere use of computers as tools," they "do not claim any improvement in the computer-related technology itself." *Beteiro*, 104 F.4th at 1357.

Seventh, Plaintiff's reliance on a Google patent to argue that the asserted claims are not abstract is legally irrelevant. *See* BBr.30-34. Plaintiff tried this tack before the district court but only in relation to *Alice* step two, thus forfeiting its argument on appeal in relation to *Alice* step one. *See* Appx177-78. In any event, the district court rightly rejected Plaintiff's attempt to tie the Section 101 analysis of the asserted claims to a Google patent. Appx22 n.7. This Court is unequivocal "that step one of the *Alice* framework does not require an evaluation of the prior art or facts outside of the intrinsic record regarding the state of the art at the time of the invention." *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1374 (Fed. Cir. 2020). Thus, a patentee's arguments and evidence that are "'wholly divorced' from the claims or the specification cannot defeat a motion to dismiss." *AI Visualize*, 97 F.4th at 1380; *see Ameranth, Inc. v. Domino's Pizza, LLC*, 792 F. App'x 780, 788 (Fed. Cir. 2019) (giving no weight to declarations and arguments unrelated to the challenged claims); *Realtime Data LLC v. Array Networks Inc.*,

- 42 -

556 F. Supp. 3d 424, 434 (D. Del. 2021) ("[S]tatements in unrelated patents do not change th[e] analysis."), *aff'd*, 2023 WL 4924814 (Fed. Cir. Aug. 2, 2023).

B.    **Plaintiff's *Alice* Step Two Arguments Are Forfeited And Fail On The Merits**

As with its *Alice* step one arguments, Plaintiff's step two arguments were undeveloped below and are largely forfeited. In any event, they are wrong on the merits. Plaintiff's arguments on step two largely rehash its erroneous arguments on step one, and thus miss the mark for similar reasons. *See* BBr.37-40 (arguing that district court ignored the claim language; asserting that district court improperly "characteriz[ed] the claim language as 'result oriented'"; and contending that district court erroneously held that "generic functional language" is an indicia of patent ineligibility). Google does not detail these repetitive arguments from Plaintiff here, as they are addressed above. *See supra* Section II.A.

Plaintiff's remaining argument is also easily dispensed with. Plaintiff argues that the claims "explain in detail how the system must be organized" or how the "system must be arranged" using a two-client application, two-data stream structure, but Plaintiff nowhere made this argument to the district court. *Compare* BBr.38, *with* Appx175-178. Indeed, Plaintiff never discussed the organization of claim elements in the proceedings below. And it certainly never mentioned that "the presenter-focused application must permit the ***simultaneous*** recording and

- 43 -

playback of both the 'computer screen video' and 'said data stream'" or that "[t]he claims continue to require a **second** client application … with similar very specific limitations." BBr.38 (emphasis by Plaintiff). Yet these new arguments are now the thrust of its *Alice* step two position. Plaintiff has forfeited them.

In any event, the key inquiry for step two is whether the claims recite more than conventional, well-known components, operating according to their ordinary functions. *See Two-Way*, 874 F.3d at 1339. Plaintiff avoids addressing decisive evidence in the patent that defeats its new argument: the '637 patent's own acknowledgement that the claim elements are generic, conventional, and routine and function in ordinary ways. *See supra* Section I.B.1. Plaintiff does not and cannot show error given the clear intrinsic record, including this evidence Plaintiff wholly fails to address.

## C.    Plaintiff's Remaining Arguments Lack Merit

Plaintiff raises procedural and other arguments that (again) are often forfeited and none has merit.

### 1.    Plaintiff's representativeness challenge is forfeited and refuted by the claims

Both here and before the district court, Plaintiff forfeited its challenge to the district court's treatment of claims 2-5 as representative. *See* BBr.25-26  In analyzing claims under Section 101, courts may treat claims as representative "if the patentee does not present any meaningful argument for the distinctive

significance of any claim limitations not found in the representative claim."
*Berkheimer*, 881 F.3d at 1365.  Google explained that claims 2-5 are representative
of claims 7-9 "because they recite substantially similar limitations and are drawn to
the same abstract idea."  Appx133 n.5; *see also* Appx118-119 & Appx126-131
(demonstrating shared elements of across the asserted claims).  Plaintiff simply
responded that it "disagrees," Appx168, forfeiting any argument that claims 2-5 are
not representative.  Indeed, Plaintiff repeats its insufficient assertion on appeal,
forfeiting its argument again.  *See* BBr.25-26 (disagreeing with the district court
but providing no reasoning as to why the court erred).  While now asserting the
dependent claims add further limitations that somehow capture an inventive
concept, Plaintiff never made any dependent-claim-specific arguments to the
district court.  *Compare* BBr.39 (discussing the "time-scale modification
component" of claims 4 and 7), *with* Appx175-178 (silence regarding all
dependent claims).

As the district court recognized, merely stating "disagree[ment]" regarding
claim representativeness does not amount to "***meaningful argument* for the
distinctive significance**" of the claims.  *Sanderling*, 65 F.4th at 701 n.1; Appx12.
"If the patent owner fails to meet its obligation to make non-frivolous arguments in
opposition to the representative claim contention, it forfeits its right to argue that
the claims in the group identified by the movant are patent eligible even if the

- 45 -

representative claim is ultimately found to be ineligible." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024); *see id.* at 1292 ("[E]ven before us [patentee] has failed to identify any limitations in any of its claims that are materially different—for purposes of a patentable subject matter analysis— from the claims the district court treated as representative.").

Forfeiture applies here.  Properly exercising its discretion, the district court required more than Plaintiff's mere disagreement.  "District courts have discretion to require parties litigating Section 101 motions to identify representative claims ***and to articulate why (or why not)*** claims are representative (including by explaining how a limitation missing from a purportedly representative claim could make a material impact to the Section 101 analysis)," *Sanderling*, 65 F.4th at 701 n.1—an articulation Plaintiff failed to provide.

Even beyond forfeiture, there is no basis to displace the district court's treatment of claims 2-5 as representative.  The court provided a thorough analysis of the asserted claims, identifying how the various claim elements substantially relate to each other and mapping shared limitations of claims 7-9 to claims 2-5. Appx11-12.  The court applied the appropriate legal standard, and it correctly recognized this Court's instruction that a patentee must "present … meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." Appx12.  Besides, Plaintiff itself draws similarities among

- 46 -

the claims and treats claims as representative. *See* BBr.25 (acknowledging "similarities" between claims 2 and 7); BBr.29 ("[u]sing claim 2 as an example"); BBr.39 (analyzing claim 4 and claim 7 in tandem). The district court properly treated claims 2-5 as representative.

### 2. Plaintiff's assertion that claim construction is needed is forfeited and baseless

Plaintiff criticizes the district court for not conducting claim construction, asserting that the court "refused to hear any argument" on the issue. BBr.39. Plaintiff failed to develop a claim-construction argument below, and it fails to develop one now. It has forfeited its claim-construction argument twice over.

As the district court explained, "Plaintiff neither propose[d] constructions of … terms nor explain[ed] 'how any proposed construction would change the § 101 analysis.'" Appx13. Likewise on appeal, while Plaintiff expresses its disagreement with the court not construing a "time-scale modification component," BBr.39, it fails to provide what construction it would propose or how that would change the analysis. As this Court instructs, where a patentee "fail[s] to identify a claim construction dispute before the district court and fail[s] even to propose a construction it contended would make a difference to the § 101 analysis," the patentee's suggestion that claim construction "was necessary as a prerequisite to deciding the motion to dismiss" can be "quickly dispose[d] of." *Mobile Accuity*, 110 F.4th at 1293. The same applies here.

- 47 -

In any event, adhering to established precedent, the district court properly determined that claim construction was unnecessary. Appx6-7 (discussing this Court's decisions); Appx12-13 (applying them). This Court has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction." *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). This Court emphasizes that it is "appropriate for [a] district court to determine that [asserted] patents [are] ineligible under § 101 at the motion to dismiss stage" if the patentee "provide[s] no proposed construction of any terms." *Id.* The district court committed no error in resolving the Section 101 issue without claim construction.

### 3. Plaintiff's challenge to resolution at the pleading stage lacks merit

Plaintiff contends that, over its "numerous objections, the district court proceeded to consider the eligibility issue on Google's motion to dismiss instead of allowing discovery to develop on key issues." BBr.40. Plaintiff contends that Google's motion "relate[d] to an underlying fact issue regarding whether the claims were 'well-understood, routine, and conventional,'" and these factual issues warranted discovery to preclude resolution of Google's motion at the pleading stage. BBr.40-41. Plaintiff's contentions are belied by the law and the record.

As this Court holds, "[l]ike other legal questions based on underlying facts," eligibility under Section 101 "may be, and frequently has been, resolved on a Rule

12(b)(6) … motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP*, 898 F.3d at 1166; *see Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022) (same). Indeed, this Court has "repeatedly recognized" that "it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Mobile Acuity*, 110 F.4th at 1289-90.

Plaintiff's citations to *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018), and *Berkheimer* do not compel otherwise. *See* BBr.40. In those cases, factual allegations in the complaint (*Aatrix*, 882 F.3d at 1126-27) or genuine disputes of material fact (*Berkheimer*, 881 F.3d at 1369) prevented resolution of pleading-stage and summary-judgment motions. Here, by contrast, Plaintiff simply makes "generalized assertions that factual considerations about the state of the art preclude a decision at the pleadings stage," which "do[es] not prevent a district court from granting a motion to dismiss, nor [this Court] from affirming such a dismissal." *Beteiro*, 104 F.4th at 1358. Indeed, in considering Plaintiff's citation to *Aatrix* below, the district court explained that, unlike the patentee in *Aatrix*, which pointed to "concrete allegations" in the complaint relevant to *Alice* step two, "Plaintiff d[id] not point to concrete allegations of this sort." Appx22 n.8.

- 49 -

Moreover, Plaintiff cannot manufacture a "factual" issue by seeking discovery in an attempt to alter what the patent itself states. *Cf. Sanderling*, 65 F.4th at 706. As a result, Plaintiff's district-court declaration—which on its face sought discovery to counter the patent's express disclosure, *see* Appx249-252 (seeking, among other topics, discovery to counter that "the '637 patent acknowledges that all of [its] components merely perform generic functions of computer and already existed before the claimed invention")—does not and cannot preclude resolution at the pleading stage. Indeed, discovery is not a prerequisite to considering a Section 101 motion to dismiss. *See Cleveland Clinic*, 859 F.3d at 1360 (This Court has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before … significant discovery has commenced."). Nor does Plaintiff's baseless request for discovery into an unrelated Google patent somehow create a factual issue. *See* Appx178.

Plaintiff further contends that the district court could not resolve the Section 101 issue at the pleading stage because Google (pursuant to judicial notice principles) cited a third-party patent. BBr.40, 42.[1] According to Plaintiff, this required conversion to summary judgment review. BBr.40, 42. That is wrong. A "Rule 12(b)(6) motion to dismiss supported by extraneous materials ***cannot*** be

---

[1] A court may take judicial notice of indisputable facts outside a complaint in weighing Section 101 challenges. *See CardioNet*, 955 F.3d at 1373.

regarded as one for summary judgment until the district court acts to convert the motion by indicating, preferably by an explicit ruling, that it will not exclude those materials from its consideration." *Swedberg v. Marotzke*, 339 F.3d 1139, 1146 (9th Cir. 2003). Here, the district court expressly stated that it did not consider materials outside "the face of Plaintiff's complaint" and emphasized it did "***not*** rely on that patent in its § 101 analysis." Appx22 n.7. Instead, the court analyzed the intrinsic record, which itself compelled the claims' patent ineligibility. Appx18-24. Plaintiff does not acknowledge the court's express words and approach limited to the complaint and the patent. Summary judgment review is inapplicable. *See Miller*, 107 F.4th at 1351 (If "the district court did not rely on any materials outside the pleadings or sections of [a party's] brief discussing materials outside of the pleadings," conversion to Rule 56 review does not arise); *see also N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 582 (9th Cir. 1983) ("[A] motion to dismiss ***is not*** automatically converted into a motion for summary judgment whenever matters outside the pleading happen to be filed with the court and not expressly rejected by the court.").

### 4.    Plaintiff's request for leave to amend was properly denied

"In the Ninth Circuit, '[a]lthough leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile.'"

*Sanderling*, 65 F.4th at 705.  The district court properly denied Plaintiff leave to amend its complaint because any amendment would be futile.

The district court's decision rests exclusively on the intrinsic record, and "[n]o amendment to a complaint can alter what a patent itself states." *Id.* at 706. Plaintiff ignores this principle.  The patent's express admissions concerning the generic, conventional, routine nature of the claim elements would have doomed any amendment.  Any allegation attempting to depart from these admissions would be "'wholly divorced' from the claims [and] the specification," which "cannot defeat a motion to dismiss." *AI Visualize*, 97 F.4th at 1380.  The district court properly denied leave to amend.

## CONCLUSION

The district court's judgment should be affirmed.

Dated:  August 30, 2024                    Respectfully submitted,


                                           */s/ John R. Boulé III*

Michael C. Hendershot                      I. Sasha Mayergoyz
JONES DAY                                  JONES DAY
1755 Embarcadero Road                      110 North Wacker Drive, Suite 4800
Palo Alto, CA 94303                        Chicago, IL 60606
                                           (312) 269-1572
Rita J. Yoon
JONES DAY                                  Jennifer L. Swize
555 California Street, 26th Floor          JONES DAY
San Francisco, CA 94104                    51 Louisiana Avenue, N.W.
                                           Washington, D.C. 20001

T. Kaitlin Crowder
JONES DAY                                  John R. Boulé III
901 Lakeside Avenue                        JONES DAY
Cleveland, OH 44114                        555 South Flower Street, 50th Floor
                                           Los Angeles, CA 90071

Daniele San Román
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121

*Counsel for Google LLC*

- 53 -

# **CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Federal Circuit Rule 32(b)(1) because it contains 11,620 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Times New Roman 14-point font.

Dated:  August 30, 2024

*/s/ John R. Boulé III*
John R. Boulé III
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071

*Counsel for Google LLC*