**No. 2024-1520**

# UNITED STATES COURT OF APPEALS FOR THE

# FEDERAL CIRCUIT

US PATENT NO. 7,679,637 LLC

*Plaintiff/Appellant,*

*v.*

GOOGLE LLC

*Defendant/Appellee.*

On Appeal from the United States District Court for the Western District of Washington, No. 2:23-cv-00592-JHC, Judge John H. Chun

**REPLY BRIEF OF APPELLANT US PATENT NO. 7,679,637 LLC**

DAVID P. BERTEN
ALISON A. RICHARDS
GLOBAL IP LAW GROUP, LLC
55 W. Monroe Street, Suite 3400
Chicago, IL 60603
(312) 241-1500

*Attorneys for Appellant
US Patent No. 7,679,637 LLC*

September 20, 2024

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number**  2024-1520

**Short Case Caption**  US Patent No. 7,679,637 LLC v. Google LLC

**Filing Party/Entity**  US Patent No. 7,679,637 LLC

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.


Date: 09/20/2024

Signature:  /s/David Berten

Name:  David Berten

i

FORM 9. Certificate of Interest                                                    Form 9 (p. 2)
                                                                                    March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| US Patent No. 7,679,637 LLC | Jeffrey Kohler | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

ii

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| J. Chad Mitchell, SUMMIT LAW GROUP, PLLC | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ IV

TABLE OF AUTHORITIES ............................................................................V

APPELLANTS REPLY BRIEF ........................................................................1

ARGUMENT ...............................................................................................4

I.    This Case Is Similar to *Contour* and the Result Should Be the Same ............4

    A.    *Contour* Reiterates that Overgeneralization of Claims at *Alice* Step One Is Improper and that "Abstract Ideas" Untethered from the Claims Must Be Avoided .................................................................4

    B.    This Case Is More Compelling Than *Contour,* and *Contour* Also Explains Why Google's Arguments Are Not Persuasive .....................8

II.    Google's Arguments Fail..................................................................12

    A.    Google Waived Arguments About Waiver .........................................12

    B.    The Plaintiff Made the Arguments in the District Court ....................14

    C.    Google's Remaining Step One Arguments Fail..................................19

    D.    Google's Step Two Arguments Fail...................................................21

    E.    Procedural Issues Compel Reversal ...................................................23

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ..............................24

# TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018) ..............................................................24

*Alice Corp. Pty. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ....................................................... passim

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
915 F.3d 743 (Fed. Cir. 2019) ...............................................................12

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ................................................... 17, 24

*Bolker v. Comm'r*,
760 F.2d 1039 (9th Cir.1985) ...............................................................13

*Contour IP Holding LLC v. GoPro, Inc.*,
Case 3:17-cv-04738-WHO, Dkt. 535 (N.D. Ca. June 30, 2021) .........................5

*Contour IP Holding LLC v. GoPro, Inc.*,
No. 2022-1654, 2024 WL 4112344 (Fed. Cir. Sept. 9, 2024) ..................... passim

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010 ...............................................................13

*Le Roy v. Tatham*,
55 U.S. 156 (1852) ...............................................................10

*McRO, Inc. v. Bandai Namco Games America Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ...............................................................10

*Midwest Indus., Inc. v. Karavan Trailers, Inc.*,
175 F.3d 1356 (Fed. Cir. 1999) ...............................................................12

*Riverwood Int'l Corp. v. R.A. Jones & Co.*,
324 F.3d 1346 (Fed. Cir. 2003) ...............................................................12

**Statutes**

35 U.S.C. § 112(6) ...............................................................18

**GLOSSARY**

| Appellant | U.S. Patent No. 7,679,637 LLC, the limited liability company that owns the '637 Patent and the plaintiff below. |
|---|---|
| BBr. | Appellant's Opening Brief of this appeal. |
| '637 Patent | U.S. Patent No. 7,679,637 (Appx28-40) |
| '954 Patent | U.S. Patent No. 8,890,954 (One of two patents involved in *Contour IP Holding LLC v. GoPro, Inc.,* No. 2022-1654 (Fed. Cir. Sept. 9, 2024) |
| POV | Point-of-view |
| RBr. | Google's Response Brief |

Note: ***All emphasis in the brief has been added unless otherwise indicated.***

**APPELLANTS REPLY BRIEF**

This case is remarkably similar to *Contour IP Holding LLC v. GoPro, Inc.* in which, on September 9, 2024, this Court issued a decision reversing a district court's finding that claims were not subject matter eligible. *Contour IP Holding LLC v. GoPro, Inc.,* No. 2022-1654, 2024 WL 4112344 (Fed. Cir. Sept. 9, 2024). In the *Contour* case, the claims described a "camera processor be configured to record low-and high-quality data streams in parallel, followed by the low-quality data stream's wireless transfer to a remote device." *Contour*, slip op. at 10. In two substantive paragraphs, the Court resolved the eligibility issue at *Alice* step one, concluding that the claims were not directed to an abstract idea, and that the district court erred by characterizing "the claims at an impermissibly high level of generality." *Contour*, slip op. at 11.

In this case, at *Alice* step one the district court characterized the *patent as a whole* (not even a specific claim) at an even higher, impermissible, level of generality, holding that:

> "the *'637 Patent* is directed to the abstract idea of playing back recorded content."

Appx18 (11-12). This generalization is wholly untethered to the claims and, following *Contour*, cannot stand. There is no possible reading of the claims that would grant the patent owner a monopoly on the abstract idea of "playing back recorded content." The district court's decision contravenes the Supreme Court's

1

guidance that an "invention is not rendered ineligible for patent simply because it *involves* an abstract concept." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). The district court's re-characterization did not "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Id*. In addition to erroneously holding that the patent claims would provide a monopoly on all of "playing back recorded content," the district court's characterization does not let any reader know that this patent is directed to web conferencing, much less the specific invention in the claims and their recited limitations.[1]

Tellingly, in one portion of Google's Response, on appeal, Google proposes a *different* abstract idea than Google proposed below and that the district court relied on:

"playing back recorded content *while a meeting is ongoing.*"
RBr. 22. Google adds the phrase "while a meeting is ongoing" to the district court's "playing back recorded content" implicitly acknowledging that the district court's abstract idea on appeal is wrong. Google also presents this for the purpose of presenting examples of supposed nontechnical activity that the claims would

---

[1] A broad generalization, of course, is the precise one that Google proposed to the district court and (somehow) defends on appeal. The Court can take judicial notice that Google is perhaps the world's largest company when it comes to playing back recorded content through its YouTube service. Google wants precedent that *any* patent relating to playing back recorded content, regardless of what the claims say, satisfies *Alice* step one.

cover.  This new formulation, presented for the first time in response to an appeal, is equally untethered to the actual claims and is still impermissible overgeneralization.  The fact that Google found it necessary to add the "while a meeting is ongoing" phrase, however, underscores just how overly broad "playing back recorded content" is.  Google could not present examples, however flawed, without first adding to the district court's "abstract idea."

In reality, like in *Contour*, the specific claims in this case, as shown in their limitations, require the simultaneous recording of at least two different data streams from the same live-streaming event, followed by the ability to play back select data streams while the live event is still being recorded such that the user can simultaneously view the live event and parts that have been recorded. This is not an abstract idea, and the result here should be identical to *Contour*.  The district court's impermissibly high-level generalization should be rejected, and this Court should determine that the claims are not directed to an abstract idea at *Alice* step one.  For that and the other reasons discussed in the Plaintiff's opening brief and this Reply, the ruling of the district court should be reversed, and the Court should hold that the invention set forth in the claims is subject matter eligible.

## ARGUMENT

### I. This Case Is Similar to *Contour* and the Result Should Be the Same

#### A. *Contour* Reiterates that Overgeneralization of Claims at *Alice* Step One Is Improper and that "Abstract Ideas" Untethered from the Claims Must Be Avoided

*Contour* involved two patents relating to "portable, point-of-view ['POV'] video cameras" that often were used in a manner where the user could not see or change the settings of the camera. *Contour Holding LLC v. GoPro, Inc.,* No. 2022-1654, slip. op. 2-3 (Fed. Cir. Sept. 9, 2024). "To address these problems, the patents describe implementing wireless technology in the video camera **10** that allows the camera to send real time information to a remote device, such as a cell phone." *Id.* at 3 (bold in original). This allows "the user can see what is being recorded by the camera" and to make "adjustments to the recording settings." *Id.*

In addition to describing the wireless technology linking the camera and the cell phone, "the patent also discloses modifications to the camera's system for processing recordings and permitting real time playback." *Id.* In what the Federal Circuit described as a "key embodiment," the patent discloses that the camera "is configured to generate video recordings 'in two formats, high quality and low quality, in which the lower quality file is streamed' to the remote device." *Id.* (quoting the patent).

In *Contour*, the parties agreed that this embodiment in the '954 patent claim 11 was representative of the claims at issue *Id.* at 4. The claim shares several

4

similarities with the claims at issue in this case: it includes a processor, for example, configured to generate multiple data streams (i.e., to "'generate from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream.'"). *Id.* 4-5 (quoting the '954 patent, claim 11). The use of multiple data streams allowed the use of the lower quality image to be sent to the wireless device for viewing and adjustment. *Id*.

In the district court, GoPro first sought entry of judgment on the pleadings arguing that the '954 patent was directed to the abstract idea of "viewing and recording video data" *Contour IP Holding LLC v. GoPro, Inc.,* Case 3:17-cv-04738-WHO, Dkt. 535, page 9 (N.D. Ca. June 30, 2021); *see also Contour IP Holding LLC v. GoPro, Inc.*, Case No. 22-1654, Dkt. 28, page 1 (Non-confidential Reply Brief filed in Fed. Cir. Dec. 12, 2022) ("viewing and recording a video"). This is a gross overgeneralization of the *Contour* claim, but even this is less broad than the "abstract idea" Google sought and the district court adopted in this case. Here, "playing back recorded content" includes any and all content. The "abstract idea" is not even limited to video and does not acknowledge any of the many other claim limitations. It only requires that *something or anything* that was previously recorded be played back. No one can reasonably argue that any claim of 7,679,637 claims all of "playing back recorded content."

5

After first rejecting a 101 motion at the judgment on the pleadings stage—thereby allowing the creation and development of a more complete record the district court prevented in this case—the district court in *Contour* determined on summary judgment that the asserted claims were not subject matter eligible. In reaching its determination, the district court first concluded (incorrectly) that claim 11 was directed to the abstract idea of

> "creating and transmitting video (at two different resolutions) and adjusting the video's setting remotely."

*Contour*, slip op. at 7 (citing and quoting the district court opinion). "At *Alice* step two, the district court concluded that the claim recites only functional, results-oriented language with 'no indication that the physical components are behaving in any way other than their basic, generic tasks.'" *Contour*, slip op. at 7-8 (citing and quoting the district court opinion).

The Federal Circuit reversed by focusing on *Alice* step one and concluding that the claims were not directed to an abstract idea. In reaching its decision, the Federal Circuit explained how a proper *Alice* step one analysis should be conducted:

> At *Alice* step one, we determine whether the claims are directed to patent ineligible subject matter. We often examine the "focus of the claimed advance over the prior art." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). **We conduct this analysis by ascertaining the "basic character" of the claimed subject matter**. *Trinity Info Media, LLC v. Covalent, Inc.*,

6

72 F.4th 1355, 1361 (Fed. Cir. 2023) (citations omitted). ***In doing so, we must avoid describing the claims at a high level of abstraction, divorced from the claim language itself***. *Enfish*, 822 F.3d at 1337.

To determine the focus of the claimed advance at *Alice* step one, we look to whether the claims are directed to "a specific means or method that improves the relevant technology" rather than simply being directed to "a result or effect that itself is the abstract idea." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). An improved result, without more, is not enough to support patent eligibility at *Alice* step one. *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019). When a claim "abstractly cover[s] results" without regard to a specific process or machinery for achieving those results, it creates preemption concerns because it "would prohibit all other persons from making the same thing by any means whatsoever." *McRO*, 837 F.3d at 1314 (*quoting Le Roy v. Tatham*, 55 U.S. 156, 175 (1852)).

*Contour*, slip op. at 9-10.

Applying these rules to the claim at issue, the Federal Circuit determined that the claim was not directed to an abstract idea: "The claims thus require specific, technological means—***parallel data stream recording with the low-quality recording wirelessly transferred to a remote device***—that in turn provide a technological improvement to the real time viewing capabilities of a POV camera's recordings on a remote device." *Contour*, slip op. at 10.  The Federal Circuit explained that the approach of the district court was fundamentally flawed because it characterized the "claims at an impermissibly high level of generality":

> ***The district court's decision characterizes the claims at an impermissibly high level of generality. As we have noted, the practice of "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that***

7

> *the exceptions to § 101 swallow the rule." Enfish*, 822 F.3d at 1337 (citations omitted).  For example, in this case, the district court's conclusion that the claims were "directed to a result or effect that itself is the abstract idea" *disregards the disclosed technological means for obtaining a technological result. Decision*, 2022 WL 658553, at \*4 (internal quotations and citation omitted). The district court *erred in its generalized articulation of the claimed advance of the claims, which all but ensured the incorrect conclusion that the claims were drawn to an abstract idea. Enfish*, 822 F.3d at 1337.

*Contour*, slip op. at 11.

As reiterated by the Federal Circuit, at *Alice* step one it is not the role of the court to generalize any possible abstraction of the claims; the analysis determines *if* the claims are limited to a specific implementation of solutions to a technical problem.  If they are, that is the end of the analysis and the claims are subject matter eligible.

### B. This Case Is More Compelling Than *Contour,* and *Contour* Also Explains Why Google's Arguments Are Not Persuasive

The similarities between this case and *Contour* are extensive, but where they differ it is because this case involves an even more egregious overgeneralization of the claims than what occurred at the district court in *Contour*.

As noted above, the district court in *Contour* determined that claim 11 was "directed to the abstract idea of 'creating and transmitting video (at two different resolutions) and adjusting the video's settings remotely.'"  While this formulation is significantly more precise than "viewing and recording a video" (or "playing back recorded content"), the Federal Circuit found that the *Contour* district court's

8

summary, even when narrowed, still "characterizes the claims at an impermissibly high level of generality." *Contour*, slip op. at 11. That is the fundamental point of this appeal. Any claim can be overly generalized to the point of abstraction. That is what Google sought—and the district court went along with—here. Concluding that the claims are directed to "playing back recorded content" characterizes them at an impermissible level of generality. The "abstract idea" is so untethered to the claims that it is literally not possible from the district court's generalization to have any idea about what the claims actually say or even what type of technology they cover. Are the claims directed to "playing back recorded content" describing a player piano, an LP, a cassette, a VCR, a laser disc, a point-of-view camera system, or selective playback of one of two data streams of a live streaming web conference? No one can know because the district court's generalization is so broad that it literally describes— and includes —*anything* that plays back recorded content, which obviously is not what the claims claim.

*Contour* also explains why each of Google's attempts to defend the district court's *Alice* step one analysis fails. Google argues, for example that the "claims do not recite any improvement to underlying computer technology." RBr. 17. That, of course, is not the correct analysis, as *Contour* confirms. Not all patent claims must relate to computer technology; patents can claim inventions of other technologies. The claim in *Contour* also "did not recite any improvement to

9

underlying **computer technology**," but they did claim an improvement in the **relevant** technology: the operation of a POV camera system.  This is precisely what the claims accomplish in this case; they claim an improvement in the underlying **relevant** technology of how live streaming presentations can be manipulated to allow selective review of portions of the presentations while the live presentation is still proceeding and being recorded.

Google next argues that the "claims recite the functional results of playing back recorded content." RBr. 18-22.  That is also not the correct analysis, as *Contour* explains: "When a claim 'abstractly cover[s] results' **without regard to a specific process or machinery for achieving those results**, it creates preemption concerns because it 'would prohibit all other persons from making the same thing by any means whatsoever.'" *Contour*, slip op. 10 (citing and quoting *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (*quoting Le Roy v. Tatham*, 55 U.S. 156, 175 (1852))). Here, the claims include "the specific process or machinery for achieving" the claimed results. Just like *Contour's* claims, the claims here require the use of at least two distinct data streams so that one of the data streams can be in "review mode" while the other data stream is continuing with the live presentation.

*Contour* also rejected the idea that the claim at issue in that case was abstract because the claims employ "known or conventional components," again opining

that the use of such components "does not necessarily mean that the claim is

*directed to* an abstract idea at step one":

> GoPro contends that the claims simply employ known or conventional components that existed in the prior art at the time of the invention. *See, e.g.,* Appellee's Br. 25–26. ***Even so, that alone does not necessarily mean that the claim is directed to an abstract idea at step one***. *See, e.g.*, *Core Wireless Licensing S.A.R.L. v. LG Elecs*., Inc., 880 F.3d 1356, 1362 (Fed. Cir. 2018) (discussing *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1348–49 (Fed. Cir. 2017)); *see also TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1297 (Fed. Cir. 2020).

*Contour*, slip op. at 11 (emphasis in original). Here again, even if the claims make

use of known or conventional components, that does not mean the claims are

directed to an abstract idea.

The core issue on this appeal is both brief and compelling: "playing back

recorded content" is both such an overgeneralization of—and so untethered to—

the claims of the '637 Patent that it cannot be accepted as the "abstract idea" to

which the claims are supposedly directed.  The fact that this summary conveys

nothing about the actual patent claims confirms that it is an overgeneralization.  A

reader does not even know from this summary that the patent relates to web

conferencing systems, much less what the claimed improvement covers.

As explained in *Contour*, the correct approach requires "ascertaining the

'basic character' of the claimed subject matter."  Here, the "basic character" of the

claimed subject matter is not "playing back recorded content," it is a specific

manner of enhancing a web conferencing system using multiple data streams to

allow review of previously recorded material while a live presentation is in progress and being simultaneously recorded.  Like the claim in *Contour*, that basic character is just ***not*** an abstract idea. Resolving the appeal takes nothing more than that analysis and conclusion.  The claims are subject matter eligible.

## II. Google's Arguments Fail

### A. Google Waived Arguments About Waiver

Google repeatedly argues that the Plaintiff "forfeited" arguments, but nowhere discusses the relevant law regarding waiver.  Google recognizes that the Federal Circuit applies regional circuit law to certain issues.  See, e.g., RBr. at 14 (motions to dismiss receive de novo review on appeal in the Ninth Circuit). Nowhere, however, does Google cite or discuss Ninth Circuit law on waiver, even though the Federal Circuit applies "regional circuit law to the issue of waiver, as it is not unique to patent law," including in cases deciding subject matter eligibility. *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 756 (Fed. Cir. 2019) (applying First Circuit waiver law in a 101 case because "[w]e apply regional circuit law to the issue of waiver, as it is not unique to patent law.") (*citing Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1352 (Fed. Cir. 2003) (*citing Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (en banc in relevant part)).   Indeed, by not citing or discussing the relevant law in its Response, Google has waived arguments ***about waiver***.

Had Google presented the relevant law, it would have had to address the fact that, in the Ninth Circuit, waiver "is a discretionary, not jurisdictional, determination." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010). In the Ninth Circuit, the Court of Appeals "***may consider issues not presented to the district court***." *Id.* Applying Ninth Circuit law, even if an argument was not presented to the district court, arguments presented for the first time on appeal are permitted "'to prevent a miscarriage of justice or to preserve the integrity of the judicial process,' 'when a new issue arises while appeal is pending because of a change in the law,' and '***when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed***.' *Id.* (*citing Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir.1985)). To the extent that Google's cases are to the contrary, the approach of the Ninth Circuit must be applied here when considering waiver on a motion to dismiss.

Here, Google's ***own argument*** puts this appeal squarely within the "no waiver" exception on appeal that is available in the Ninth Circuit, because Google argued that 101 issues are "ultimately a question of law" and Google did not point to an underlying factual dispute, and instead its position here requires that it deny (1) the existence of any factual dispute that would have prevented a decision on the

13

motion to dismiss and (2) that the district court was required to make factual findings, which it did not make. Google argued:

> Patent eligibility under Section 101 "is ***ultimately a question of law*** that may be based on underlying factual findings." *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1377 (Fed. Cir. 2024). Section 101 challenges can be resolve**d** at the motion-to-dismiss stage "***where the undisputed facts***," applying Rule 12(b)(6)'s standards, "require a holding of ineligibility." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

RBr. 14-15.  Having failed to address any of this law in its Response, Google waived the ability to argue against the "no waiver" provisions of Ninth Circuit law as they apply to questions of law.

Plaintiff also argued to the district court (and preserved the argument in its opening brief) that resolution of the 101 issue was premature and the district court should have waited for the development of a more complete record.  This Ninth Circuit exception applies as well, so there was no waiver in this case even if Google could actually demonstrate that particular arguments were not presented to the district court.

**B.   The Plaintiff Made the Arguments in the District Court**

Google argues that the Appellant's step one arguments were both "forfeited" and fail on the merits. RBr. 32-43.  Google's lead argument, purporting to find fault with the appeal, is that the Plaintiff supposedly did not argue below that the claims are focused on web-based conferencing and that they allow "web-based

14

conference participants to asynchronously observe an in-person meeting [] while the in-person meeting is still in progress." RBr. 32.  It's unclear how Google could, in good faith, even advance such a position because Plaintiff made each of the arguments Google says were "forfeited" below.  Screenshots demonstrate that the arguments Google represents to this Court are missing were, in reality, expressly stated in the one brief Plaintiff was permitted to file at the district court.

Google's Federal Circuit Response states, on page 32:

> First, Plaintiff asserts that the "claims in the case … are focused on a specific improvement to activity that occurs only within the realm of computers: web-based conferencing."  BBr.35.  It argues that "the claims are focused on a specific and concrete technological advance," BBr.22, which Plaintiff describes as "enabl[ing] web-based conference participants to asynchronously observe an in-person meeting, i.e., observe a previously recorded part of the in-person meeting while the in-person meeting is still in progress."  BBr.28; *see* BBr.26-29 (making the same argument).
>
> Plaintiff, however, never developed this argument below.  This Court "does

But Plaintiff's opposition to Google's motion to dismiss expressly argued each of these below:

15

Ex. 2 at 3:7-16 (emphasis added). Web conferencing systems, however, presented technical challenges that are different from television viewing, and Mr. Kohler's invention solved some of those technical issues, overcoming technological problems specifically arising in the realm of these web conferencing systems.

For example, unlike a self-contained DVR, web conferencing systems of the kind claimed in the invention involve at least two distinct applications: one used by the presenter and separate applications used by other participants. The '637 patent expressly claims the use of two different applications. *See e.g.*, Ex. 2, 12:33-44. Second, unlike TV, web conferencing systems of the kind claimed in the invention use more than one data stream. The '637 patent expressly claims the use of distinct data streams. *See e.g.*, Ex. 2, 12:35-38. These are only two examples of the way that web-based conferencing systems operate differently than DVRs, but they are sufficient to demonstrate that the existence of a device like a TiVo for televised content does not mean that that a TiVo could be used to record and playback web-based conferences.

The '637 explains that, unlike DVRs/TiVo with televisions, "current web conferencing systems are unable to enable participants to asynchronously observe a live meeting, i.e., observe a previously recorded part of the meeting while the meeting is still in progress." Ex. 2 at 2:51-54. The patent also explains how web conferencing systems make use of different streams of data and how a technique used in a different field can be applied to data streams in a web conference:

> In this system, a web conferencing session contains one or more streams. A stream is any type of data that a participant can share or observe. Examples of streams include screen video, camera video, audio (through computers and/or through telephones), documents, collaborative chat, or any other types of data involved in a web conferencing session.

> Streams are comprise[d of] a series of discrete frames. Frames are time dependent data. Examples of frames include a segment of audio, a single video image, etc. In the first embodiment each frame in a stream is given a sequential number. Frames

PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE'S
RULE 12(B)(6) MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 4
CASE NO.  2:23-cv-00592-JHC

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Appx165

Appx165. The arguments were not "forfeited"; Google's representations to this Court are, politely stated, incorrect and inaccurate.

Instead of forfeiting the argument, Plaintiff argued that the district court should have followed the process identical to the process *Contour* requires: the district court "must focus its review on the claims" (Appx173 (7-11) (citing and quoting *Berkheimer*)) and avoid "as an extremely high level of generality [that] ignores the claims themselves." Appx173 (19-20). The argument Plaintiff makes here is identical to the one it advanced in the district court: the claims are not directed to an abstract idea under *Alice* step one.

Here, the claims themselves set forth the argument Google asserts is "newfound." Claim 2, element (f) recites:

> whereby said web conferencing system is able to simultaneously record said computer screen video and said data stream and allow said observing participant to sense current and previously presented parts of said computer screen video and said data stream.

Google urged the district court (and this Court) to ignore what the claims say, but that is the precise error this Court is required to correct. Claim 2 element (f)—just one small part of the claim as a whole—cannot be fairly summarized as "playing back recorded content." By its terms, it requires a web conferencing system that is able to simultaneously record and playback at the same time (that, of course, is what "simultaneously" means) so that the participant can see both the live presentation and part that was previously recorded. This is not and cannot be a "newfound" argument. It is what the claim says in black and white.

17

Google similarly distorts the record regarding "result oriented" claiming, falsely asserting that the argument was not made below. The title (adjusting for capitalization) of section III.D of the Plaintiff's brief in the district court was "*Alice* step two: Google's argument about functional claiming contravenes 35 U.S.C. § 112(6), which allows functional claiming, and requires claim construction and disputed factual issues." Appx175. The argument about "functional" or "result-oriented" claiming goes on for four pages (Appx175-178), and includes the exact same argument that Google's *own* patents, which Google must contend are valid, use the exact same type of functional claiming. *Compare* chart at Appx177-178 below with BBr. 32-33 (using same chart). [2] Google dismisses as irrelevant its own functional claiming language on page 42 of its Response, but no amount of argument can change the fundamental point of Plaintiff's argument: by seeking, maintaining, and not surrendering its own patents with "functional claiming," Google is admitting that functional claiming by itself does not render claims subject matter ineligible. Google's own practices are not irrelevant; they are directly contrary to the point it convinced the district court to adopt. They

---

[2] When Google finally addresses its own use of functional claiming, it argues the Plaintiff presented the argument under *Alice* step two and "waived" it for step one. RBr. 42. First, Google waived arguments about waiver. Second, while Google raised functional claiming with regard to step one, the Plaintiff was responding to Google "functional claiming" argument on the merits, regardless of whether it was addressed under step one or step two. It was not waived.

18

demonstrate Google is taking directly contrary positions, and, on that basis, one of them is wrong.  The only one that makes sense to be wrong is that functional claiming renders patents subject matter ineligible.

### C.  Google's Remaining Step One Arguments Fail

Google presents seven arguments supposedly supporting its position under the heading (correcting for capitalization): "Plaintiff's *Alice* step one arguments are forfeited and fail on the merit."  Most of the arguments are addressed above. The remaining arguments also fail.

*"Playing back recorded content" is rooted in technology.*  Citing only section I.A.3 of its Response brief (and nothing in the district court), Google faults the Plaintiff for supposedly ignoring "that numerous nontechnical solutions to this problem existed."  Google's argument is flawed for several reasons. First, section I.A.3 presents a *different* "abstract idea" than the one pursued by Google and adopted by the district court (i.e., "playing back recorded content" without more). Instead, on page 22 of the Response, Google writes: "This, however, is no more than the abstract idea of playing back recorded content *while a meeting is ongoing*." Second, Google mixes "nontechnical" and technical "solutions" to the new and different abstract idea it presents for the first time on appeal.  It suggests, for example, that asking "one person to repeat what the other person said" in a three-way conversation is a conventional solution to the problem.  RBr. 23.

19

Google, of course, made no such argument to the district court, and if it had, the case would involve a wholly different "abstract idea" than the one at issue on appeal. Google's nontechnical examples (reviewing a transcript, reviewing notes on a whiteboard while a lecture is on-going, and someone repeated someone else) have nothing to do with "playing back recorded content." Something written on a whiteboard in a lecture is never "played back"; it just sits there until its erased. One person repeating the words of another is not being "played back"; it was never recorded in the first place. While a transcript is one type of record of what was said, it's not "played back," it's read.

The other two examples Google supplies for its new and different abstract idea in section I.A3.—VCRs and DVRs—do allow "playing back recorded content," but are also, unquestionably, "rooted in technology." They support Plaintiff's position (and contradict Google's) that "playing back recorded content" is rooted in technology. In short, Google failed to provide even a single example of "playing back recorded content" that is not "rooted in technology." As commonly used since Edison's invention of the phonograph, all of "playing back recorded content" is technological in nature and not an abstract idea. This is not simply moving hedging or intermediated settlement to a computer; it is a technological marvel that humanity has only unlocked—and consistently improved

20

in myriad different ways such as an asynchronous web conference—in the last 150 years or so.

***The claim limitations recite a specific implementation of a web-conferencing system and this demonstrates why they are not directed to an abstract idea.*** Again ignoring what the claims actually say, Google argues that limiting the "invention to web-based conferencing does not render the claims any less abstract." RBr. 40. Just as the claims in *Contour* are limited to an improved POV camera system, the claims of the '637 Patent course are limited to an improved web-based conferencing system. This is not claiming a building block of human ingenuity and limiting its use to a technological field. The claims here are fundamentally about innovations in web-based conferencing systems. Just like the claims in *Contour*, the claims in this case set forth specific requirements that define the improvement, root the improvement in technology, and do not attempt to claim every solution to the problem.

### D. Google's Step Two Arguments Fail

Again relying on waiver arguments it waived, Google again ignores parts of the record below, arguing for example, that the Plaintiff's pointing out the claims require two applications is new. RBr. 43-33. Because the claims require "two different applications," e.g., a "first client application" in element (a) and a "second client application" in element (d), it is impossible for the Plaintiff to have

21

waived that requirement. The claims require a first and second client application. Second—and just like Google's other misleading "waiver" arguments—Plaintiff's opposition expressly argued "Claim 2 claims how web-based conferences *that use two different applications (one to stream the conference and the other to view it)* and at least two different data streams that are both streaming live and being recorded such that a participant can time-shift the conference." Appx174-175.

The same is true for Google's assertion that the Plaintiff never argued that the claims require simultaneous recording and playback. RBr. 43-44. That requirement is expressly in the claims themselves, which were obviously presented to the district court. E.g. claim 2, last element ("whereby said web conferencing system is able to *simultaneously record said computer screen video and said data stream and allow said observing participant to sense current and previously presented parts* of said computer screen video and said data stream."); claim 7, last element ("whereby said data streams from said first client application can be *simultaneously recorded by and retrieved from said storage device*, and said second client application allows said observing participant to sense said data streams in real-time, and said second client application also allows said observing participant to selectively sense a previously presented and recorded part of said data streams"). Again, while it's not possible to waive a claim element, it is

22

possible to ignore them, as both Google and the district court did when they overgeneralized the claim as "playing back recorded content."

Google made no other arguments regarding *Alice* step two, and the Court should conclude, if it reaches step two, that either the claims contend an inventive step or, in the alternative, that it was premature for the Court to resolve the issue on a motion to dismiss.

### E. Procedural Issues Compel Reversal

***The "Representative Claims" Issue.*** On the "representative claims" issue, Google's motion to dismiss included these four words: "Claims 2-5 are representative." Appx118. That's it. Plaintiff responded that Google's argument was conclusory, failed to explain how the claims were representative, and failed completely to address the individual elements of the independent and dependent claims. Appx168. As the movant, Google always has the burden of proof and should not be able to rely on four-word conclusory statements to meet that burden or shift it to the non-movant.

***The Claim Construction/Prematurity Issue.*** The issue with regard to claim construction overlaps with the general premature nature of Google's motion. Again turning the burden of moving versus non-moving party on its head, Google argues that Plaintiff failed to identify a claim construction issue that would prevent a finding of subject matter ineligibility. RBr. 47. But Plaintiff raised exactly such

23

an issue, arguing that *Google* would seek to limit the "functional claiming" to even more concrete structures during claim construction. Appx.175-176.  In other words, Google wanted (and got) broad readings of functional language on a motion to dismiss while preserving later arguments that those same limitations were actually more narrow.  The point being that if Google was going to make those arguments—and it doubtless was—the court should be deciding the 101 issue *after* the claim interpretation process and not before it.  Indeed, in the *Contour* case, one of the issues that lead the Court to conclude the claims were not ineligible was a narrowing construction that took place in claim construction. *Contour*, slip op. at 10-11.  This is one reason why *Berkheimer* and *Aatrix* caution against early resolution of the 101 issue.  Courts should be making the eligibility determination with the benefit of a more complete record, not rushing to resolve an issue that relies on underlying facts without permitting the development of those facts.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

Neither the Supreme Court in *Alice*, nor this Court in any of its following decisions, contemplated pleading-stage dismissals of patents whose claims embody technical solutions to technical problems.

The Court should reverse the finding of the District Court and find that claims 2, 3, 4, 5, 7, 8, and 9 of the '637 Patent are subject matter eligible. In the alternative, this Court should reverse the finding of the District Court as premature

and order that the subject matter eligibility determination be made only after a reasonable time for discovery allows for consideration of a more complete record.

Dated: September 20, 2024                Respectfully submitted,

/s/ *David P. Berten*

David Berten
Alison Aubry Richards
GLOBAL IP LAW GROUP LLC
55 West Monroe Street, Suite 3400
Chicago, IL 60603
(312) 241-1500

*Attorneys for Appellant*
*US PATENT NO. 7,679,637 LLC*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules.

1. The brief complies with Fed. Cir. R. 32(b). It has been prepared using Microsoft® Word 2013 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of Microsoft® Word in preparing this certificate. That program reports the total word count of the document, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2), as 5,721 words even adding from other pictures the total is 6,171 words.

Dated: September 20, 2024              /s/ *David P. Berten*

David Berten
GLOBAL IP LAW GROUP LLC
55 West Monroe Street, Suite 3400
Chicago, IL 60603
(312) 241-1500

26